IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| DEFENSE DISTRIBUTED and SECOND AMENDMENT FOUNDATION, INC., | § § § | Case No. 1:18-CV-637 |
| Plaintiffs, | § § | |
| v. | § § | PLAINTIFFS' FIRST AMENDED COMPLAINT |
| GURBIR GREWAL, in his official capacity as the State of New Jersey's Attorney General; MICHAEL FEUER, in his official capacity as the City of Los Angeles, California's City Attorney; ANDREW CUOMO, in his official capacity as the State of New York's Governor; MATTHEW DENN, in his official capacity as the State of Delaware's Attorney General; JOSH SHAPIRO, in his official capacity as the Commonwealth of Pennsylvania's Attorney General; and THOMAS WOLF, in his official capacity as the Commonwealth of Pennsylvania's Governor, | § § § § § § § § § § § § | |
| Defendants. | § § | |
| _____ | § | |

Plaintiffs Defense Distributed and Second Amendment Foundation, Inc., file this First Amended Complaint.

## I. INTRODUCTION

1.     Defense Distributed is a Texas company that promotes the Second Amendment's individual right to keep and bear Arms by publishing important information about firearms to the general public.  Its audience includes the Second Amendment Foundation's members.

2.     Defense Distributed published on the internet a particular set of computer files concerning firearms.  It did so pursuant to and in accordance with the following authorities: (1) a settlement agreement between the United States Department of State, Defense Distributed, and the Second Amendment Foundation; (2) a temporary modification of the State Department's regulations concerning federal export licensing requirements; (3) a State Department license, signed by the State Department's Deputy Assistant Secretary for Defense Trade Controls, approving the files at issue for public release (i.e., unlimited distribution); (4) an official State Department acknowledgment that the temporary modification permits any United States person to access, discuss, use, reproduce, or otherwise benefit from the files at issue, and that the State Department's license permits any such person to access, discuss, use, reproduce or otherwise benefit from the licensed files; and (5) the Constitution of the United States of America.

3.     The computer files about firearms that Defense Distributed published constitute important expressions of technical, scientific, artistic, and political information.  They lie at the heart of the Constitution's First Amendment and its Second Amendment, and they rightly belong to the public domain.  Defense Distributed desires and intends to resume its publication of these files on the internet, and its audience desires and intends to receive them there.  But the Defendants forced Defense Distributed to stop publishing the files on the internet.  Censorship has begun.

4.      The Defendants are state officials—attorney generals, governors, and a city attorney—that refuse to acknowledge Defense Distributed's right to publish the computer files at issue on the internet.  The Defendants are so eager to abridge the Second Amendment's right to keep and bear Arms that they are willing abridge the First Amendment as a means of doing so.

5.      Under the color of state law, the Defendants are waging a coordinated and politically-fueled campaign to censor Defense Distributed—and only Defense Distributed.  They do so despite the fact that federal law expressly authorized Defense Distributed to publish the files at issue on the internet; and they do so despite the fact that countless other members of the public freely engage in the same or similar speech.  The Defendants censor Defense Distributed because they dislike speech favoring the Second Amendment and because they dislike this particular speaker.

6.      The Defendants' conduct subjects the Plaintiffs to an unconstitutional abridgement of First Amendment freedoms; an unconstitutional infringement of Second Amendment rights; an unconstitutional violation of the right to equal protection of the laws; an unconstitutional deprivation of liberty and property without due process of law; an unconstitutional violation of the Commerce Clause; and regulation by way of state laws that are preempted by federal law.

7.      The Defendants' wrongdoing has already inflicted substantial constitutional harms upon the Plaintiffs.  Their wrongdoing continues to inflict these harms at present.  Their wrongdoing will do nothing but escalate and continue harming the Plaintiffs in the future unless this Court intervenes.

8.      By the authority of the Constitution of the United States and the Civil Rights Act of 1871, 42 U.S.C. § 1983, the Court should declare the Defendants' conduct illegal and issue an injunction protecting the Plaintiffs from future violations.

## II. PARTIES

9.      Plaintiff Defense Distributed is a Texas corporation organized under the laws of the State of Texas.  Defense Distributed's headquarters and principal place of business are in Austin, Texas.  Cody Wilson directs Defense Distributed.

10.     Defense Distributed defends the American civil liberty of popular access to arms that is guaranteed by the Constitution of the United States.  It carries out this purpose by publishing information regarding the production of arms to the general public.  The information that Defense Distributed publishes expresses matters of a technical, scientific, artistic, and political nature.

11.     To achieve the end of legally committing essential information to the public domain, Defense Distributed uses various publication media.  Primarily and most importantly, Defense Distributed legally commits information to the public domain on the internet by hosting computer files on its website and making them available for visitors to download.  Defense Distributed also publishes information about firearms at a brick-and-mortar public library in digital formats that patrons can access via computer workstations at the library.

12.     Plaintiff Second Amendment Foundation, Inc. ("SAF") is a non-profit membership organization incorporated under the laws of the State of Washington.  SAF's principal place of business is in Bellevue, Washington.  SAF brings this action on behalf of its members.

13.     SAF promotes the right to keep and bear arms by supporting education, research, publications, and legal efforts about the Constitution's right to privately own and possess firearms and the consequences of gun control.  Some SAF members reside in the Defendants' jurisdictions and seek to receive the computer files that Defense Distributed seeks to publish on the internet via its website.  These SAF members seek this information because of its technical, scientific, artistic, and political value.  Some SAF members also seek to share their own computer files by utilizing

Defense Distributed's facilities.

14.     Defendant Gurbir Grewal is the State of New Jersey's Attorney General.  He is sued in his official capacity.

15.     Defendant Michael Feuer is the City of Los Angeles, California's City Attorney. He is sued in his official capacity.

16.     Defendant Andrew Cuomo is the State of New York's Governor.   He is sued in his official capacity.

17.     Defendant Matthew ("Matt") Denn is the State of Delaware's Attorney General. He is sued in his official capacity.

18.     Defendant Josh Shapiro is the Commonwealth of Pennsylvania's Attorney General. He is sued in his official capacity.

19.     Defendant Thomas ("Tom") Wolf is the Commonwealth of Pennsylvania's Governor.   He is sued in his official capacity.

20.     In each of the respective jurisdictions at issue, the Defendants are responsible for the actions and threatened actions that this lawsuit challenges.

### III. JURISDICTION & VENUE

21.     The Court has subject-matter jurisdiction of this action because it arises under the Constitution and laws of the United States, including the Civil Rights Act of 1871, 42 U.S.C. § 1983. *See* 28 U.S.C. § 1331.  The Court also has subject-matter jurisdiction of this action because it is an action to redress the deprivation, under color of state law, of rights, privileges, and immunities secured by the Constitution and statutes providing for equal rights of citizens or of all persons within the jurisdiction of the United States.  *See* 28 U.S.C. § 1343.

22.    The Court has supplemental subject-matter jurisdiction over the action's state-law claims.  *See* 28 U.S.C. § 1367.

23.    This action's requested relief requested is authorized by 28 U.S.C. § 1343, 28 U.S.C. § 1651(a), 28 U.S.C. §§ 2201 and 2202, 42 U.S.C. § 1983, and 42 U.S.C. § 1988.

24.    This Court constitutes a proper venue for this action because a substantial part of the events or omissions giving rise to the claim occurred here, *see* 28 U.S.C. § 1391(b)(2), because a substantial part of the property that is subject of the action is situated here, *see id.*, and because there is no district in which this action may otherwise be brought, and the Defendants are subject to this Court's personal jurisdiction, *see* 28 U.S.C. § 1391(b)(3).

25.    Defense Distributed resides in Austin, Texas.  Defense Distributed's principal place of business has always been Austin, Texas. The vast majority of Defense Distributed's activities, including research, design, development, manufacturing, and publishing, have always occurred in and around Austin.  All of Defense Distributed's employees live in or near Austin.  The public library that displays Defense Distributed's publications is in Austin, Texas.

26.    This action arises from actions that the Defendants took and intend to take against Defense Distributed's activities in Austin, Texas and Defense Distributed's property in Austin, Texas, including computer servers and library materials.

## IV. FACTS

### *Defense Distributed I*: Litigation

27.    "*Defense Distributed I*" refers to a federal civil action: *Defense Distributed, et al. v. United States Department of State, et al.*, civil action number 1:15-CV-372-RP in the United States District Court for the Western District of Texas, Austin Division.  *Defense Distributed I* is presently pending before this Court, with post-judgment motions still outstanding.

28.     The plaintiffs in *Defense Distributed I* are Defense Distributed, SAF, and an individual SAF member, Conn Williamson.

29.     The defendants in *Defense Distributed I* are the "State Department": the United States Department of State, the Secretary of State, the State Department's Directorate of Defense Trade Controls, the Acting Deputy Assistant Secretary of State for Defense Trade Controls in the Bureau of Political-Military Affairs, and the Acting Director of the Office of Defense Trade Controls Policy Division.

30.     *Defense Distributed I* concerned four defined categories of computer files: the "Published Files," the "Ghost Gunner Files," "CAD Files," and the "Other Files."  Together, these four defined categories of files are referred to as the "*Defense Distributed I* Files."

31.     The "Published Files" category of *Defense Distributed I* Files consists of ten separate sets of files.  The "Published Files" category consists of stereolithography (.stl) files about firearm components, Initial Graphics Exchange Specification (.igs) files about firearm components, SoLiDworks PaRT (.sldprt) files about firearm components, SketchUp (.skp) files about firearm components, Standard for the Exchange of Product Data ("STEP") (.stp) files about firearm components, diagrams of firearm components, renderings, "read me" plain text files about firearm assembly methods, "read me" plain text files about the National Firearms Act and the Undetectable Firearms Act, and software licenses.  From December 2012 until May 2013 and at other times since then, Defense Distributed published the Published Files on the internet.

32.     The "Ghost Gunner Files" category of *Defense Distributed I* Files consists of software, data files, project files, coding, and models containing technical information for a machine, named the "Ghost Gunner," that can be used to manufacture a variety of items, including gun parts.

33. The "CAD Files" category of *Defense Distributed I* Files consists of STEP (.stp) and stereolithography (.stl) files about a lower receiver to the AR-15 rifle.

34. The "Other Files" category of *Defense Distributed I* Files consists of files that contain technical information, to include design drawings, rendered images, written manufacturing instructions, and other technical information that Defense Distributed intends to post to public forums on the Internet; provided, however, that this category only extends insofar as those files regard items that, as of June 29, 2018, were exclusively: (i) in Category I(a) of the United States Munitions List, as well as barrels and receivers covered by Category I(g) of the United States Munitions List that are components of such items; or (ii) items covered by Category I(h) of the United States Munitions List solely by reference to Category I(a), excluding Military Equipment.

35. The State Department administers and enforces the Arms Export Control Act of 1976, 22 U.S.C. ch. 39 ("the AECA"), and its primary implementing regulations, the International Traffic in Arms Regulations, 22 C.F.R. Parts 120-130 ("the ITAR").

36. *Defense Distributed I* began after the State Department used the AECA and ITAR regime to impose a prior restraint on public speech concerning technical firearms data, including the *Defense Distributed I* Files. Under this prior restraint, the State Department required that Defense Distributed obtain prior United States government approval before publication of such technical data could occur on the internet and at other public venues.

37. The plaintiffs in *Defense Distributed I* challenged the State Department's enforcement of the AECA/ITAR regime vis-à-vis the *Defense Distributed I* Files. In particular, they challenged the State Department's governance of the *Defense Distributed I* Files as ultra vires action not authorized by the statutes and regulations at issue, and as violations of the First, Second, and Fifth Amendments of the Constitution.

38. At a preliminary stage of the litigation, the Court denied plaintiffs' motion for a preliminary injunction. *Def. Distributed v. Dep't of State*, 121 F. Supp.3d 680 (W.D. Tex. 2015).

39. Interlocutory appellate proceedings left that preliminary decision undisturbed. A divided Fifth Circuit panel affirmed the Court's preliminary decision. *Def. Distributed v. United States Dep't of State*, 838 F.3d 451 (5th Cir. 2016). Five judges dissented from the Fifth Circuit's denial of rehearing en banc. *Def. Distributed v. Dep't of State*, 865 F.3d 211 (5th Cir. 2017). The Supreme Court denied certiorari. *Def. Distributed v. Dep't of State*, 138 S. Ct. 638 (2018).

### *Defense Distributed I*: Settlement Agreement

40. After the interlocutory appeal concluded, this Court in *Defense Distributed I* ordered the parties to engage in settlement negotiations. The parties did so successfully and settled their dispute by agreement.

41. The *Defense Distributed I* settlement agreement is memorialized by the "Settlement Agreement": a written contract that all sides executed on June 29, 2018. A copy of that instrument is attached to this complaint as Exhibit A.

42. The Settlement Agreement obligates the parties to perform all of their obligations in good faith. In particular, the Settlement Agreement obligates the State Department to do four key things with regard to the *Defense Distributed I* Files:

a. Settlement Agreement Paragraph 1(a) requires the State Department to draft and fully pursue, to the extent authorized by law (including the Administrative Procedure Act), the publication in the Federal Register of a notice of proposed rulemaking and final rule, revising United States Munitions List ("USML") Category I to exclude the *Defense Distributed I* Files.

b. Settlement Agreement Paragraph 1(b) requires the State Department to announce, while the above-referenced final rule is in development, a temporary modification, consistent with International Traffic in Arms Regulations (ITAR), 22 C.F.R. § 126.2, of USML Category I to exclude the *Defense Distributed I* Files; and to publish the announcement on the

Directorate of Defense Trade Controls website on or before July, 27, 2018.

c.      Settlement Agreement Paragraph 1(c) requires the State Department to issue a license to the *Defense Distributed I* plaintiffs on or before July 27, 2018, signed by the Deputy Assistant Secretary for Defense Trade Controls, advising that the Published Files, Ghost Gunner Files, and CAD Files are approved for public release (i.e., unlimited distribution) in any form and are exempt from the export licensing requirements of the ITAR because they satisfy the criteria of 22 C.F.R. § 125.4(b)(13).

d.      Settlement Agreement Paragraph 1(d) requires the State Department to acknowledge and agree that the temporary modification of USML Category I permits any United States person, to include Defense Distributed's customers and SAF's members, to access, discuss, use, reproduce, or otherwise benefit from the *Defense Distributed I* Files, and that the license issued to the *Defense Distributed I* plaintiffs permits any such person to access, discuss, use, reproduce or otherwise benefit from the Published Files, Ghost Gunner Files, and CAD Files.

43.     Efforts to defeat the Settlement Agreement began on July 25, 2018—two days before the Settlement Agreement's compliance deadline for certain obligations.  Three gun control groups—the Brady Campaign to Prevent Gun Violence, Everytown for Gun Safety Action Fund, Inc. and Giffords—tried to intervene in *Defense Distributed I* and tried to obtain an order temporarily restraining the Settlement Agreement's effectuation.

44.     The City Attorney of Los Angeles supported the gun control groups' effort to defeat the Settlement Agreement and indicated his intent to conduct a similar intervention effort at the earliest opportunity.  The City Attorney's representatives made an appearance at the hearing on the gun control groups' requests for intervention and injunctive relief.

45.     This Court rejected the gun control groups' effort to block the Settlement Agreement.  It denied the requests for intervention and injunctive relief.

46.     After that ruling, the *Defense Distributed I* parties stipulated to the action's dismissal pursuant to the Settlement Agreement and Federal Rule of Civil Procedure 41(a)(1)(A)(ii).  This Court entered an order dismissing the action, allocating costs, and closing

the case.  *Defense Distributed I* remains pending before this Court.

### Settlement Agreement Compliance

47.     After the Settlement Agreement was executed, the State Department began to carry out its Settlement Agreement obligations in several key respects.

48.     First, by July 27, 2018, the State Department had taken steps to comply with the obligation imposed by Settlement Agreement Paragraph 1(a).  It published in the Federal Register a notice of proposed rulemaking revising USML Category I to exclude the *Defense Distributed I* Files.  *See* 83 Fed. Reg. 24,198 (May 24, 2018).

49.     Second, by July 27, 2018, the State Department had taken steps to comply with the obligation imposed by Settlement Agreement Paragraph 1(b).  It made a temporary modification to USML Category I, pursuant to 22 C.F.R. § 126.2, to "exclude" the *Defense Distributed I* Files from Category I.    A copy of that instrument is attached to this complaint as Exhibit B.  By way of the Temporary Modification, the State Department authorized the distribution of the *Defense Distributed I* Files without any prior restraint.

50.     Third, by July 27, 2018, the State Department had taken steps to comply with the obligation imposed by Settlement Agreement Paragraph 1(c).  It issued Defense Distributed a license—a letter issued by the State Department's Acting Deputy Assistant Secretary for the Directorate of Defense Trade Controls—authorizing the Defendants to publish the Published Files, Ghost Gunner Files, and CAD Files for "unlimited distribution."    A copy of that instrument is attached to this complaint as Exhibit C.

51.     Fourth, by July 27, 2018, the State Department had taken steps to comply with the obligation imposed by Settlement Agreement Paragraph 1(d).  It acknowledged and agreed that the temporary modification permits any United States person to access, discuss, use, reproduce, or

otherwise benefit from the *Defense Distributed I* Files; and that the license issued to the *Defense Distributed I* plaintiffs permits any such person to access, discuss, use, reproduce or otherwise benefit from the Published Files, Ghost Gunner Files, and CAD Files.  *See* Ex. A at 2.

52.     For the next five days, Defense Distributed, SAF, Conn Williamson, and any "U.S. person" were free to publish the *Defense Distributed I* Files on the internet, free to receive them on the internet, and free to republish them on the internet.

### Publication of *Defense Distributed I* Files Resumed Briefly

53.     From the evening of July 27, 2018 until the afternoon of July 31, 2018, Defense Distributed published the Shared Files to the internet's public domain via defcad.com, a Defense Distributed website.  The files were downloaded thousands of times.  Defense Distributed also published electronic versions of the Shared Files at a public library in Texas.

54.     During this period of time, independent publishers unaffiliated with Defense Distributed or *Defense Distributed I* published the *Defense Distributed I* Files—including the Shared Files—and files like them to the internet.

55.     The other publishers have not ceased publication.  To this day, they continue to publish *Defense Distributed I* Files and files like them to generally-accessible internet websites. Such files can be located by a simple Google search.

56.     On July 30, 2018, New Jersey Attorney General Gurbir Grewal, Delaware Attorney General Matt Denn, Pennsylvania Attorney General Josh Shapiro, and eighteen other state attorney generals (hereinafter the "Opposing Attorney Generals") jointly issued a letter to United States Secretary of State Mike Pompeo and United States Attorney General Jeff Sessions.   A copy of that instrument is attached to this complaint as Exhibit D.

57.     The Opposing Attorney Generals' July 30, 2018 letter urged the United States Department of State and United States Department of Justice to withdraw from the Settlement Agreement and rescind steps that had been taken to comply with it: "We urge you to withdraw from the settlement and withdraw the proposed rules immediately, and allow full and fair consideration of any future proposed rules on these issues."

58.     The Opposing Attorney Generals' July 30, 2018 letter again urged the United States Department of State and United States Department of Justice to withdraw from the Settlement Agreement: "We urge you to withdraw from the settlement immediately."

59.     On July 30, 2018, nine of the Opposing Attorney Generals—including New Jersey Attorney General Gurbir Grewal and Pennsylvania Attorney General Josh Shapiro—initiated a civil action against the State Department, Defense Distributed, SAF, and Conn Williamson.  The other Opposing Attorney Generals—including Delaware Attorney General Matt Denn—joined the lawsuit as plaintiffs soon thereafter.

60.     The Opposing Attorney Generals' lawsuit is currently docketed in the United States District Court for the Western District of Washington as *State of Washington et al., v. United States Department of State et al.*, No. 2:18-cv-1115-RSL.  It seeks injunctive relief against the State Department's "temporary modification" actions and its approval of the *Defense Distributed I* Files for public release.

61.     On July 31, 2018, the Opposing Attorney Generals obtained from the United States District Court for the Western District of Washington a temporary restraining order against the federal government defendants: "The federal government defendants and all of their respective officers, agents, and employees are hereby enjoined from implementing or enforcing the 'Temporary Modification of Category I of the United States Munitions List' and the letter to Cody

R. Wilson, Defense Distributed, and Second Amendment Foundation issued by the U.S. Department of State on July 27, 2018, and shall preserve the status quo ex ante as if the modification had not occurred and the letter had not been issued."

62.    On July 31, 2018, after the United States District Court for the Western District of Washington issued its temporary restraining order, Defense Distributed ceased publishing the *Defense Distributed I* Files on the internet.

63.    On August 27, 2018, the Opposing Attorney Generals obtained from the United States District Court for the Western District of Washington a preliminary injunction against the United States Department of State, Michael R. Pompeo, the Directorate of Defense Trade Controls, Mike Miller, and Sarah Heidema: "The federal defendants and all of their respective officers, agents, and employees are hereby enjoined from implementing or enforcing the 'Temporary Modification of Category I of the United States Munitions List' and the letter to Cody R. Wilson, Defense Distributed, and the Second Amendment Foundation issued by the U.S. Department of State on July 27, 2018, and shall preserve the status quo ex ante as if the modification had not occurred and the letter had not been issued until further order of the Court."

**The Defendants are Violating Federal Law**

64.    The Constitution guarantees Defense Distributed's right to publish the *Defense Distributed I* Files to the internet.  No federal or state authority can contradict that right.

65.    Similarly, the State Department's fulfillment of its Settlement Agreement obligations guarantees Defense Distributed's right to publish the *Defense Distributed I* Files to the internet.  No state authority can contradict that right.

66.    The Defendants' conduct denies Defense Distributed's right to publish the *Defense Distributed I* Files to the internet.  The Defendants' conduct also denies Defense Distributed's

14

audience's right to receive the *Defense Distributed I* Files via the internet.  The Defendants achieve these ends by acting coercively, intentionally, and in concert.

67.     The Defendants coercively demanded that Defense Distributed not publish the *Defense Distributed I* Files to the internet.

68.     The Defendants coercively threatened to punish Defense Distributed for publishing the *Defense Distributed I* Files to the internet.

69.     The Defendants urged the United States Department of State and United States Department of Justice to withdraw from the Settlement Agreement and not perform the federal government's obligations thereunder.

70.     The Defendants held public press conferences, issued public statements, and otherwise publicized their efforts to coercively censor Defense Distributed.

71.     The Defendants initiated multiple lawsuits that seek to stop Defense Distributed's publication of the *Defense Distributed I* Files to the internet.

72.     The Defendants took all of these enforcement actions selectively.  They have not taken similar actions against the many similarly-situated persons who publish the *Defense Distributed I* Files and similar files on the internet.

73.     The Defendants' unlawful and intentional actions are not justified by a substantial or compelling government interest and are not narrowly tailored to serve any such interest.

74.     The Defendants have inflicted very serious constitutional harms on the Plaintiffs already, and they have demonstrated a commitment to escalate their unconstitutional course of conduct in the immediate future.

**New Jersey's Attorney General**

75.     New Jersey Attorney General Gurbir Grewal is actively engaged in an ongoing coercive campaign to stop Defense Distributed's publication of the *Defense Distributed I* Files.

76.     On July 26, 2018, New Jersey Attorney General Gurbir Grewal issued Defense Distributed a formal cease-and-desist letter.  A copy of that instrument is attached to this complaint as Exhibit E.

77.     New Jersey Attorney General Gurbir Grewal's July 26, 2018 cease-and-desist letter commanded Defense Distributed to cease publishing the *Defense Distributed I* Files: "You are directed to cease and desist from publishing printable-gun computer files for use by New Jersey residents."

78.     New Jersey Attorney General Gurbir Grewal's July 26, 2018 cease-and-desist letter repeatedly declared Defense Distributed's publication of the *Defense Distributed I* Files to be a violation of New Jersey law.  It said that this publication "violates New Jersey's public nuisance and negligence laws."  It said that this publication "violates our public nuisance law."  It said that this publication "constitute[s] a public nuisance."  It said that this publication "is negligent."

79.     New Jersey Attorney General Gurbir Grewal's July 26, 2018 cease-and-desist letter threatened to punish Defense Distributed for publishing the *Defense Distributed I* Files online: "If you do not halt your efforts to proceed with publication, I will bring legal action against your company before August 1, 2018."

80.     New Jersey Attorney General Gurbir Grewal's July 26, 2018 cease-and-desist letter delivered another command backed by a threat of punishment: "As the chief law enforcement officer for New Jersey, I demand that you halt publication of the printable-gun computer files. Should you fail to comply with this letter, my Office will initiate legal action barring you from

publishing these files before August 1, 2018."

81.     On July 30, 2018—one day after the Plaintiffs began the instant action in this Court—New Jersey Attorney General Gurbir Grewal initiated a civil lawsuit against Defense Distributed.  The New Jersey Attorney General's lawsuit against Defense Distributed is currently docketed in the United States District Court for the District of New Jersey as *Gurbir S. Grewal, Attorney General of the State of New Jersey v. Defense Distributed, et al.*, No. 12-cv-13248-SDW-LDW.  It seeks an injunction stopping Defense Distributed's publication of the *Defense Distributed I* Files.

82.     On July 30, 2018, New Jersey Attorney General Gurbir Grewal sent a letter to DreamHost.  A copy of that instrument is attached to this complaint as Exhibit F.

83.     DreamHost is a company that contracted to provide internet security services for Defense Distributed.  DreamHost's Acceptable Use Policy formed part of the contract between Defense Distributed and DreamHost.

84.     New Jersey Attorney General Gurbir Grewal's July 30, 2018 letter to Defense Distributed's service provider encouraged DreamHost to terminate its provision of services to Defense Distributed.

85.     New Jersey Attorney General Gurbir Grewal's July 30, 2018 letter to Defense Distributed's service provider declared that, by planning to publish the *Defense Distributed I* Files on its website, "Defense Distributed is plainly planning to use the Defcad Website in a way that violates DreamHost's Acceptable Use Policy."

86.     New Jersey Attorney General Gurbir Grewal's July 30, 2018 letter to Defense Distributed's service provider declared that Defense Distributed's publication of the *Defense Distributed I* Files violated New Jersey law.  It said that "posting them violates New Jersey's

public nuisance and negligence laws."  It said that "posting them would . . . be illegal."

87.     On July 30, 2018, New Jersey Attorney General Gurbir Grewal sent a copy of the July 26, 2018 cease-and-desist letter to the legal department of Cloudflare, Inc.  Cloudflare, Inc. provides internet security services for Defense Distributed by contract.

### Pennsylvania's Governor & Attorney General

88.     Pennsylvania Governor Tom Wolf and Pennsylvania Attorney General Josh Shapiro are actively engaged in an ongoing coercive campaign to stop Defense Distributed's publication of the *Defense Distributed I* Files.

89.     On July 29, 2018—the same day that the instant action began—the Commonwealth of Pennsylvania, Pennsylvania Governor Tom Wolf, Pennsylvania Attorney General Josh Shapiro, and the Pennsylvania State Police initiated a civil action against Defense Distributed.  The lawsuit is currently docketed in the United States District Court for the Eastern District of Pennsylvania as *Commonwealth of Pennsylvania, et al., v. Defense Distributed, et al.*, No. 2:18-cv-03208-PD. It seeks an injunction stopping Defense Distributed's publication of the *Defense Distributed I* Files.

90.     On July 29, 2018, Pennsylvania Governor Tom Wolf and Pennsylvania Attorney General Josh Shapiro declared their joint intent to stop Defense Distributed's publication of the *Defense Distributed I* Files to the internet's public domain in a press release.  A copy of that instrument is attached to this complaint as Exhibit G.

91.     In the July 29, 2018 press release, Pennsylvania Attorney General Josh Shapiro deemed stopping Defense Distributed's publication of the *Defense Distributed I* Files a "victory."

92.     In the July 29, 2018 press release, Pennsylvania Governor Tom Wolf promised to "fight" Defense Distributed's publication of the *Defense Distributed I* Files and "not be deterred."

93.     In the July 29, 2018 press release, Pennsylvania Governor Tom Wolf and Pennsylvania Attorney General Josh Shapiro committed to "continue seeking" to block Defense Distributed's publication of the *Defense Distributed I* Files to the internet.

94.     On August 29, 2018, Pennsylvania Attorney General Josh Shapiro renewed his commitment to stopping Defense Distributed's publication of the *Defense Distributed I* Files to the internet in statements published by Wired Magazine.

### Delaware's Attorney General

95.     Delaware Attorney General Matt Denn is actively engaged in an ongoing coercive campaign to stop Defense Distributed's publication of the *Defense Distributed I* Files.

96.     On July 30, 2018, Delaware Attorney General Matt Denn sent Defense Distributed a cease-and-desist letter.  A copy of that instrument is attached to this complaint as Exhibit H.

97.     Delaware Attorney General Matt Denn's July 30, 2018 cease-and-desist letter commanded Defense Distributed to cease publishing the *Defense Distributed I* Files: "You are hereby directed to cease and desist from publishing printable gun computer files for use by Delaware residents."

98.     Delaware Attorney General Matt Denn's July 30, 2018 cease-and-desist letter threatened to stop Defense Distributed's publication of the *Defense Distributed I* Files online: "The State of Delaware Department of Justice will take legal action to prevent any effort by Defense Distributed intended to publish or offer individuals—including criminals—programs, codes, drawings, or other sources of data that an individual can used to create untraceable firearms."

99.     Delaware Attorney General Matt Denn's July 30, 2018 cease-and-desist letter declared Defense Distributed's publication of the *Defense Distributed I* Files to be a violation of Delaware law: "Any action to disseminate this information constitutes a violation of the State of

Delaware's nuisance and negligence laws."

100.    Delaware Attorney General Matt Denn's July 30, 2018 cease-and-desist letter delivered a command to halt publication of the *Defense Distributed I* Files and backed it with a threat of punishment: "If you do not immediately halt your efforts to distribute this information, by whatever electronic form and by whatever electronic means, Delaware DOJ will bring legal action against your company."

101.    Delaware Attorney General Matt Denn's July 30, 2018 cease-and-desist letter delivered another command to halt publication of the *Defense Distributed I* Files and backed it with another threat of punishment: "Delaware DOJ demands that you halt publication of the printable-gun computer files in the State of Delaware immediately.  Should you fail to comply with this letter, our office will initiate legal action barring you from publishing these files and seeking costs and attorney fees in order to make the public whole."

### New York's Governor

102.    New York Governor Andrew Cuomo is actively engaged in an ongoing coercive campaign to stop Defense Distributed's publication of the *Defense Distributed I* Files.

103.    On July 31, 2018 New York Governor Andrew Cuomo sent Defense Distributed a cease-and-desist letter.  A copy of that instrument is attached to this complaint as Exhibit I.

104.    New York Governor Andrew Cuomo's July 31, 2018 cease-and-desist letter commanded Defense Distributed to cease publishing the *Defense Distributed I* Files: "You are directed to cease and desist from publishing 3-D printable gun files for use by New York residents."

105.    New York Governor Andrew Cuomo's July 31, 2018 cease-and-desist letter declared Defense Distributed's online publication of the *Defense Distributed I* Files a violation of

New York "public nuisance" law.

106.    New York Governor Andrew Cuomo's July 31, 2018 cease-and-desist letter threatened to punish Defense Distributed's publication of the *Defense Distributed I* Files online: "As such, should you refuse to cease and desist, the release of these plans into the State of New York will represent more than just an ill-conceived plan but a violation of New York law which will be met by legal action."

107.    New York Governor Andrew Cuomo's July 31, 2018 cease-and-desist letter again commanded Defense Distributed to cease publishing the *Defense Distributed I* Files: "As Governor, I demand that you immediately stop all plans for publishing 3-D printable gun file for use in New York."

108.    On the evening of July 31, 2018, New York Governor Andrew Cuomo directly telephoned Defense Distributed's counsel to demand that Defense Distributed stop publishing the *Defense Distributed I* files on the internet.  Defense Distributed's counsel informed Governor Cuomo that the New York Attorney General had already secured a temporary restraining order from the United States District Court for the Western District of Washington. Governor Cuomo indicated that he was unaware of the Court's order and noted that the New York Attorney General does not work for him.

## Los Angeles City Attorney

109.    Los Angeles City Attorney Michael Feuer is actively engaged in an ongoing coercive campaign to stop Defense Distributed's publication of the *Defense Distributed I* Files.

110.    On July 27, 2018, Los Angeles City Attorney Michael Feuer issued a letter that the Brady Campaign to Prevent Gun Violence, Everytown for Gun Safety Action Fund, and Giffords filed with this Court in *Defense Distributed I*.  A copy of that instrument is attached to this

complaint as Exhibit J.

111.    Los Angeles City Attorney Michael Feuer's July 27, 2018 letter urged this Court to grant the gun control groups' request for intervention.

112.    Los Angeles City Attorney Michael Feuer's July 27, 2018 letter declared that Defense Distributed's publication of the *Defense Distributed I* Files "would directly cause numerous violations of California and City law."

113.    Los Angeles City Attorney Michael Feuer's July 27, 2018 letter announced the City's intent to intervene in the litigation at the earliest opportunity. Additionally, representatives from the City Attorney's Office noted their appearances during oral arguments in this Court.

114.    On July 29, 2018, Los Angeles City Attorney Michael Feuer issued a press release. A copy of that instrument is attached to this complaint as Exhibit K.

115.    Los Angeles City Attorney Michael Feuer's July 29, 2018 press release commanded Defense Distributed to cease publishing the *Defense Distributed I* Files.  It declared that the *Defense Distributed I* Files "should not be published under any circumstances."

### Great, Irreparable, and Continuing Harm

116.    Because of the Defendants' conduct, Defense Distributed has refrained—and continues to refrain—from publishing the *Defense Distributed I* Files.

117.    The Defendants' conduct abridges the Plaintiffs' exercise of rights guaranteed by the First Amendment, Second Amendment, Fourteenth Amendment, and federal law.

118.    The Defendants' conduct chills the Plaintiffs' exercise of rights guaranteed by the First Amendment, Second Amendment, Fourteenth Amendment, and federal law.  The chilling effect reaches Defense Distributed's publication of the *Defense Distributed I* Files, SAF members' receipt of those files, and other related exercises of rights under the First Amendment, Second

Amendment, Fourteenth Amendment, and federal law.

119.    Absent relief from this Court, the Plaintiffs reasonably expect that the Defendants' wrongful conduct will continue.  Going forward, the Defendants have credibly threatened to meet the prospect of Defense Distributed publishing the *Defense Distributed I* files on the internet with escalated punishment.  If the Defendants' illegal actions are not enjoined, they will cause a permanent state of unconstitutional censorship.

## V. CLAIMS FOR RELIEF

### Count One: 42 U.S.C. § 1983—Freedom of Speech and of the Press

120.    The Plaintiffs incorporate the paragraphs above as though fully set forth herein.

121.    The First Amendment of the Constitution of the United States forbids laws abridging the freedom of speech, or of the press.  It applies to each of the Defendants by virtue of the Fourteenth Amendment of the Constitution of the United States.

122.    The Defendants have violated 42 U.S.C. § 1983 by acting, under color of state law, to subject the Plaintiffs to an unconstitutional abridgement of First Amendment freedoms.

123.    The Defendants have violated 42 U.S.C. § 1983 by threatening, under color of state law, to subject the Plaintiffs to an unconstitutional abridgement of First Amendment freedoms.

124.    The Defendants' conduct violates the First Amendment doctrine regarding prior restraints.  *See, e.g.*, *Bantam Books, Inc. v. Sullivan*, 372 U.S. 58 (1963).  The Defendants' conduct constitutes a prior restraint of expression; as such, it is an unconstitutional abridgement of First Amendment's freedoms because the Defendants cannot carry the heavy burden of justifying a prior restraint and because the prior restraint does not operate under sufficient judicial superintendence.

125.    The Defendants' conduct violates the First Amendment doctrine regarding content-based speech restrictions.  *See, e.g.*, *Reed v. Town of Gilbert, Ariz.*, 135 S. Ct. 2218 (2015).

The Defendants' conduct imposes content-based speech restrictions; as such, the restrictions are an unconstitutional abridgement of First Amendment's freedoms because they do not serve a compelling governmental interest and are not narrowly drawn to serve any such interest.

126.    The Defendants' conduct violates the First Amendment doctrine regarding content-neutral speech restrictions.  *See, e.g.*, *McCullen v. Coakley*, 134 S. Ct. 2518 (2014).  Even if the Defendants' conduct is deemed to impose content-neutral speech restrictions, it is an unconstitutional abridgement of First Amendment's freedoms because it does not serve a significant governmental interest and is not narrowly drawn to serve any such interest.

127.    The Defendants' conduct violates the First Amendment doctrine regarding overbreadth. *See, e.g.*, *City of Houston, Tex. v. Hill*, 482 U.S. 451 (1987).  The Defendants' conduct forbids a substantial amount of constitutionally protected speech and is not narrowly tailored to prohibit only constitutionally unprotected speech; as such, it is an unconstitutional abridgement of First Amendment's freedoms.

128.    In each of these respects, the Defendants' conduct results in an unconstitutional abridgement of First Amendment freedoms both facially and as applied to these circumstances.

129.    The Defendants' conduct proximately caused damages to the Plaintiffs, to the persons with whom the Plaintiffs have communicated, to the persons who desire to communicate with the Plaintiffs, and to other persons wishing to engage in similar communications.  The damages include, but are not limited to, the loss of First Amendment rights, the chilling effect on conduct protected by the First Amendment, and the substantial time and resources expended in defense of these rights.

130.    The Plaintiffs are therefore entitled to a judgment against the Defendants awarding the Plaintiffs declaratory relief, injunctive relief, and attorney fees and costs.

## Count Two: 42 U.S.C. § 1983—Right to Keep and Bear Arms

131.    The Plaintiffs incorporate the paragraphs above as though fully set forth herein.

132.    The Second Amendment of the Constitution of the United States forbids laws abridging the individual right to keep and bear Arms.  It applies to each of the Defendants by virtue of the Fourteenth Amendment of the Constitution of the United States.

133.    The Defendants have violated 42 U.S.C. § 1983 by acting, under color of state law, to subject the Plaintiffs to an unconstitutional abridgement of Second Amendment rights.

134.    The Defendants have violated 42 U.S.C. § 1983 by threatening, under color of state law, to subject the Plaintiffs to an unconstitutional abridgement of Second Amendment rights.

135.    The Defendants' conduct violates the individual Second Amendment right to keep and bear Arms.  *See District of Columbia v. Heller*, 554 U.S. 570, 627 (2008).  The Defendants' conduct infringes the individual right to make and acquire Arms, which is part and parcel of the right to keep and bear Arms; as such, it is an unconstitutional abridgement of Second Amendment rights.

136.    In each of these respects, the Defendants' conduct constitutes an unconstitutional abridgement of Second Amendment rights both facially and as applied to these circumstances.

137.    The Defendants' conduct proximately caused damages to the Plaintiffs, the persons they communicate with, and others.  The damages include, but are not limited to, the loss of Second Amendment rights, the chilling effect on conduct protected by the Second Amendment, and the substantial time and resources expended in defense of these rights.

138.    The Plaintiffs are therefore entitled to a judgment against the Defendants awarding the Plaintiffs declaratory relief, injunctive relief, and attorney fees and costs.

## Count Three: 42 U.S.C. § 1983—Equal Protection

139.     The Plaintiffs incorporate the paragraphs above as though fully set forth herein.

140.     The Equal Protection Clause of the Fourteenth Amendment of the Constitution of the United States forbids the several States from denying to any person within their jurisdictions the equal protection of the laws.  It applies to each of the Defendants.

141.     The Defendants have violated 42 U.S.C. § 1983 by acting, under color of state law, to subject the Plaintiffs to an unconstitutional violation of the Equal Protection Clause.

142.     The Defendants have violated 42 U.S.C. § 1983 by threatening, under color of state law, to subject the Plaintiffs to an unconstitutional violation of the Equal Protection Clause.

143.     The Defendants' conduct violates the Equal Protection Clause's doctrine regarding selective enforcement.  *See, e.g.*, *Whren v. United States*, 517 U.S. 806 (1996).  The Defendants have taken action against Defense Distributed—but not similarly situated persons engaged in publication of the *Defense Distributed I* Files—because the Defendants disagree with the content of Defense Distributed's constitutionally-protected speech and because the Defendants dislike the persons involved in the speech; as such, the Defendants' conduct violates the Plaintiffs' right to the equal protection of the laws.

144.     In each of these respects, the Defendants' conduct constitutes an unconstitutional violation of the Equal Protection Clause both facially and as applied to these circumstances.

145.     The Defendants' conduct proximately caused damages to the Plaintiffs, the persons they communicate with, and others.  The damages include, but are not limited to, the Plaintiffs' loss of Equal Protection Clause rights and the substantial time and resources expended in defense these rights.

146.     The Plaintiffs are therefore entitled to a judgment against the Defendants awarding the Plaintiffs declaratory relief, injunctive relief, and attorney fees and costs.

### Count Four: 42 U.S.C. § 1983—Due Process

147.     The Plaintiffs incorporate the paragraphs above as though fully set forth herein.

148.     The Due Process Clause of the Fourteenth Amendment of the Constitution of the United States forbids the several States from depriving any person of life, liberty, or property without due process of law.  It applies to each of the Defendants.

149.     The Defendants have violated 42 U.S.C. § 1983 by acting, under color of state law, to subject the Plaintiffs to a deprivation of liberty and property without due process of law.

150.     The Defendants have violated 42 U.S.C. § 1983 by threatening, under color of state law, to subject the Plaintiffs to a deprivation of liberty and property without due process of law.

151.     The Defendants' conduct violates the Due Process Clause doctrine regarding vagueness. *See, e.g.*, *F.C.C. v. Fox Television Stations, Inc.*, 567 U.S. 239 (2012).  The Defendants' conduct forbids expression without giving fair notice of what is forbidden; as such, it is an unconstitutional deprivation of liberty and property without due process of law.

152.     The Defendants' conduct violates the Due Process Clause doctrine regarding overbreadth.  *See, e.g.*, *Coates v. City of Cincinnati*, 402 U.S. 611 (1971).  The Defendants' conduct forbids a substantial amount of constitutionally protected speech; as such, it is an unconstitutional deprivation of liberty and property without due process of law.

153.     The Defendants' conduct violates the Due Process Clause doctrine regarding deprivations of property.  *See, e.g.*, *Matthews v. Eldridge*, 424 U.S. 319 (1976).  The Defendants' conduct deprives the Plaintiffs of a license issued by the Secretary of State pursuant to federal law, and does so without supplying adequate pre-deprivation notice and an opportunity to be heard; as

such, it is an unconstitutional deprivation of property without due process of law.

154.     In each of these respects, the Defendants' conduct constitutes an unconstitutional abridgement of Due Process Clause rights both facially and as applied to these circumstances.

155.     The Defendants' conduct proximately caused damages to the Plaintiffs, the persons they communicate with, and others.  The damages include, but are not limited to, the loss of the Plaintiffs' Due Process Clause rights and the substantial time and resources expended in defense these rights.

156.     The Plaintiffs are therefore entitled to a judgment against the Defendants awarding the Plaintiffs declaratory relief, injunctive relief, and attorney fees and costs.

### Count Five: 42 U.S.C. § 1983—Commerce Clause

157.     The Plaintiffs incorporate the paragraphs above as though fully set forth herein.

158.     The Commerce Clause of Article I, Section 8 of the Constitution of the United States imposes a negative command, known as the dormant Commerce Clause, that limits the authority of the several States to enact laws burdening interstate commerce.  It applies to each of the Defendants.

159.     The Defendants have violated 42 U.S.C. § 1983 by acting, under color of state law, to subject the Plaintiffs to a deprivation of the right to be free of commercial restraints that violate the dormant Commerce Clause.

160.     The Defendants have violated 42 U.S.C. § 1983 by threatening, under color of state law, to subject the Plaintiffs to a deprivation of the right to be free of commercial restraints that violate the dormant Commerce Clause.

161.     The Defendants' conduct violates the dormant Commerce Clause doctrine regarding laws that directly regulate interstate commerce. *See, e.g.*, *Granholm v. Heald*, 125 S. Ct.

1885 (2005).  The Defendants' conduct directly regulates interstate commerce by projecting their laws into other states.  The Defendants' conduct does not serve a compelling governmental interest.  And the Defendants' conduct is not the least restrictive means of accomplishing any such interest. As such, it violates the Commerce Clause.

162.    The Defendants' conduct violates the dormant Commerce Clause doctrine regarding laws that discriminate against interstate commerce. *See, e.g.*, *Granholm*, 125 S. Ct. 1885. The Defendants' conduct discriminates against interstate commerce on purpose, on its face, and in effect.  The Defendants' conduct does not serve a compelling governmental interest.  And the Defendants' conduct is not the least restrictive means of accomplishing any such interest.  As such, it violates the Commerce Clause.

163.    The Defendants' conduct violates the dormant Commerce Clause doctrine regarding all laws that implicate interstate commerce.  *See, e.g.*, *Pike v. Bruce Church, Inc.*, 397 U.S. 137 (1970).  The Defendants' conduct imposes burdens on interstate commerce that are clearly excessive in relation to putative local benefits; as such, it violates the Commerce Clause.

164.    In each of these respects, the Defendants' conduct constitutes an unconstitutional abridgement of Due Process Clause rights both facially and as applied to these circumstances.

165.    The Defendants' conduct proximately caused damages to the Plaintiffs, the persons they communicate with, and others.  The damages include, but are not limited to, the loss of Dormant Commerce Clause rights in the past and the substantial time and resources expended in defense these rights.

166.    The Plaintiffs are therefore entitled to a judgment against the Defendants awarding the Plaintiffs declaratory relief, injunctive relief, and attorney fees and costs.

## Count Six: 42 U.S.C. § 1983—Supremacy Clause

167.    The Plaintiffs incorporate the paragraphs above as though fully set forth herein.

168.    The Supremacy Clause of the Constitution of the United States provides that the Constitution of the United States and the Laws of the United States which shall be made in Pursuance thereof shall be the supreme Law of the Land.  It applies to each of the Defendants by virtue of Article VI of the Constitution of the United States.

169.    The Defendants have violated 42 U.S.C. § 1983 by acting, under color of state law, to regulate the Defendants pursuant to state laws that are preempted by federal law.  "[I]f an individual claims federal law immunizes [the plaintiff] from state regulation, the court may issue an injunction upon finding the state regulatory actions preempted." *Armstrong v. Exceptional Child Ctr., Inc.*, 135 S. Ct. 1378, 1384 (2015).

170.    Federal law authorizes Defense Distributed's publication of the *Defense Distributed I* Files on the internet, preempts any state law to the contrary, and thereby immunizes the Plaintiffs from the Defendants' attempt to stop Defense Distributed's publication of the *Defense Distributed I* Files on the internet.  In particular, the Defendants' actions are preempted because of the federal government's exclusive authority to administer and enforce pertinent provisions of the Arms Export Control Act of 1976, 22 U.S.C. ch. 39, and the International Traffic in Arms Regulations, 22 C.F.R. Parts 120-130; because of the federal government's exclusive authority to enter into and fulfill the Settlement Agreement; and because of the federal government's exclusive authority to conduct litigation in which the United States, an agency, or officer thereof is a party, or is interested, *see* 28 U.S.C. §§ 516, 519.

171.    In this respect, the Defendants' conduct is preempted both facially and as applied to these circumstances.

172.   The Defendants' conduct proximately caused damages to the Plaintiffs, the persons they communicate with, and others.   The damages include, but are not limited to, the loss of immunity from preempted state regulation in the past and the substantial time and resources expended in defense these rights.

173.   The Plaintiffs are therefore entitled to a judgment against the Defendants awarding the Plaintiffs declaratory relief and injunctive relief, and attorney fees and costs.

### Count Seven: Tortious Interference with the Settlement Agreement

174.   The Plaintiffs incorporate the paragraphs above as though fully set forth herein.

175.   The Settlement Agreement is an existing, valid contract between the *Defense Distributed I* Plaintiffs and the State Department.

176.   The Defendants committed the tort of intentional interference with an existing contract by willfully and intentionally engaging in conduct that made the State Department's performance of the Settlement Agreement burdensome, more difficult, and of less or no value to the *Defense Distributed I* Plaintiffs.   *See, e.g.*, Restatement (Second) of Torts § 766 (1979); *Prudential Ins. Co. of Am. v. Fin. Review Services, Inc.*, 29 S.W.3d 74 (Tex. 2000).

177.   The Defendants' conduct proximately caused Defense Distributed to suffer substantial actual damages in excess of $75,000 per year.

178.   Plaintiff Defense Distributed is therefore entitled to a judgment against the Defendants awarding declaratory relief, injunctive relief, and attorney fees and costs.

### Count Eight: Tortious Interference with Existing Contracts

179.   The Plaintiffs incorporate the paragraphs above as though fully set forth herein.

180.   Defense Distributed and DreamHost have an existing, valid contract for the provision of internet security services regarding Defense Distributed's website.

31

181.   Defendant Gurbir Grewal committed the tort of intentional interference with an existing contract by willfully and intentionally engaging in conduct that made the performance of Defense Distributed's contract with DreamHost burdensome, more difficult, and of less or no value to Defense Distributed.  *See, e.g.*, Restatement (Second) of Torts § 766 (1979); *Prudential Ins. Co. of Am. v. Fin. Review Services, Inc.*, 29 S.W.3d 74 (Tex. 2000).  Defendant Gurbir Grewal's conduct proximately caused Defense Distributed to suffer substantial actual damages in excess of $75,000 per year.

182.   Defense Distributed and Cloudflare, Inc. have an existing, valid contract for the provision of internet security services regarding Defense Distributed's website.

183.   Defendant Gurbir Grewal committed the tort of intentional interference with an existing contract by willfully and intentionally engaging in conduct that made the performance of Defense Distributed's contract with Cloudflare, Inc. burdensome, more difficult, and of less or no value to Defense Distributed.  *See, e.g.*, Restatement (Second) of Torts § 766 (1979); *Prudential Ins. Co. of Am. v. Fin. Review Services, Inc.*, 29 S.W.3d 74 (Tex. 2000).  Defendant Gurbir Grewal's conduct proximately caused Defense Distributed to suffer substantial actual damages substantial actual damages in excess of $75,000 per year.

184.   Plaintiff Defense Distributed is therefore entitled to a judgment against Defendant Gurbir Grewal awarding declaratory relief, injunctive relief, and attorney fees and costs.

## VI. Jury Demand

185.   The Plaintiffs demand a jury trial.

## VII. Prayer for Relief

186.   The Plaintiffs request that the Court enter a judgment in favor of the Plaintiffs and against the Defendants issuing the following relief:

a.    A declaration that the Defendants have unconstitutionally abridged the Plaintiffs'
First Amendment freedoms, and an injunction protecting the Plaintiffs from such
abridgement in the future.

b.    A declaration that the Defendants have unconstitutionally infringed the Plaintiffs'
Second Amendment rights, and an injunction protecting the Plaintiffs from such
infringement in the future.

c.    A declaration that the Defendants have unconstitutionally denied the Plaintiffs the
equal protection of the laws, and an injunction protecting the Plaintiffs from such
violations in the future.

d.    A declaration that the Defendants unconstitutionally subjected the Plaintiffs to a
deprivation of liberty and property without due process of law, and an injunction
protecting the Plaintiffs from such violations in the future.

e.    A declaration that the Defendants have unconstitutionally violated the Plaintiffs'
dormant Commerce Clause rights, and an injunction protecting the Plaintiffs from
such violations in the future.

f.    A declaration that federal law preempts and immunizes the Plaintiffs' from the
Defendants' regulatory conduct, and an injunction protecting the Plaintiffs from
such preempted action in the future.

g.    A declaration that the Defendants' conduct constitutes tortious interference with
the Settlement Agreement, and an injunction protecting Defense Distributed from
such tortious interference in the future.

h.    A declaration that Defendant Gurbir Grewal's conduct constitutes tortious
interference with the contracts between Defense Distributed and DreamHost and

Cloudflare, Inc. and an injunction protecting Defense Distributed from such tortious interference in the future.

i.      An award of costs, including a reasonable attorney fee.

j.      Any other relief the Plaintiffs are entitled to.

Date: September 17, 2018                         Respectfully submitted,

                                                BECK REDDEN LLP
                                                By /s/ Chad Flores
                                                Chad Flores*
                                                cflores@beckredden.com
                                                State Bar No. 24059759
                                                Mary Kate Raffetto
                                                mkraffetto@beckredden.com
                                                State Bar No. 24098296
                                                Dan Hammond*
                                                dhammond@beckredden.com
                                                State Bar No. 24098886
                                                1221 McKinney St., Suite 4500
                                                Houston, TX 77010
                                                (713) 951-3700 | (713) 952-3720 (fax)

                                                FARHANG & MEDCOFF
                                                Matthew Goldstein*
                                                mgoldstein@fmlaw.law
                                                D.C. Bar No. 975000
                                                4801 E. Broadway Blvd., Suite 311
                                                Tucson, AZ 85711
                                                (202) 550-0040 | (520) 790-5433 (fax)

                                                Josh Blackman*
                                                joshblackman@gmail.com
                                                Virginia Bar No. 78292
                                                1303 San Jacinto Street
                                                Houston, TX 77002
                                                (202) 294-9003 | (713) 646-1766 (fax)

                                                *Admitted *pro hac vice*

                                                Attorneys for Plaintiffs Defense Distributed
                                                and  Second Amendment Foundation, Inc.,
                                                and Conn Williamson

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the above and foregoing document was served on the following parties and/or counsel of record through a manner authorized by Federal Rule of Civil Procedure 5(b) this 17th day of September, 2018:

| | |
|---|---|
| Jeremy Fiegenbaum<br>jeremy.feigenbaum@njoag.gov<br>25 Market Street<br>8th Floor, West Wing<br>Trenton, NJ 08625<br>609-376-2690 | Via Email and Certified Mail |
| Michael Feuer, individually and in<br>his official capacity as Los Angeles<br>City Attorney<br>Office of the Los Angeles City Attorney<br>200 N. Main Street, Room 800<br>Los Angeles, CA 90012 | Via Certified Mail |
| Jonathan F. Mitchell<br>Mitchell Law PLLC<br>jonathan@mitchell.law<br>106 East Sixth Street, Suite 900<br>Austin, TX 78701<br>(512) 686-3940 | (512) 686-3941 (fax) | Via CM/ECF |
| Matthew A. Goldstein<br>Farhang & Medcoff<br>mgoldstein@fmlaw.law<br>4801 E. Broadway Blvd., Suite 311<br>Tucson, AZ 85711<br>(202) 550-0040 | (520) 790-5433 (fax) | Via CM/ECF |
| Joshua Michael Blackman<br>Josh Blackman LLC<br>joshblackman@gmail.com<br>1303 San Jacinto St.<br>Houston, TX 77002<br>(202) 294-9003 | (713) 646-1766 (fax) | Via CM/ECF |

/s/ Mary Kate Raffetto
Mary Kate Raffetto