IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| DEFENSE DISTRIBUTED and SECOND AMENDMENT FOUNDATION, INC., | § § § | Case No. 1:18-CV-637-RP |
| Plaintiffs, | § § | |
| v. | § § | **Plaintiffs' Response to Defendant Michael Feuer's Motion to Dismiss** |
| GURBIR GREWAL, in his official capacity as New Jersey Attorney General; MICHAEL FEUER, in his official capacity as Los Angeles City Attorney; ANDREW CUOMO, in his official capacity as New York Governor; MATTHEW DENN, in his official capacity as Attorney General of the State of Delaware; JOSH SHAPIRO, in his official capacity as Attorney General of Pennsylvania; and THOMAS WOLF, in his official capacity as Pennsylvania Governor, | § § § § § § § § § § § § | |
| Defendants. | § § | |

Plaintiffs Defense Distributed and the Second Amendment Foundation, Inc. ("SAF") file this response to Defendant Michael Feuer's Rule 12 motion to dismiss, Dkt. 50.

## SUMMARY OF THE ARGUMENT

The case against Defendant Michael Feuer, the Los Angeles City Attorney, is perfectly orthodox in substance, as well as procedurally.  The motion to dismiss it should be denied.

In substance, the case against Feuer turns on the "difference between government expression and intimidation—the first permitted by the First Amendment, the latter forbidden by it."  *Backpage.com, LLC v. Dart*, 807 F.3d 229, 230 (7th Cir. 2015).  For while it is true that Feuer "has a First Amendment right to express his views about [Defense Distributed]," it is still the case that "a public official who tries to shut down an avenue of expression of ideas and opinions through 'actual or threatened imposition of government power or sanction' is violating the First Amendment."  *Id.*  "What matters is the distinction between attempts to convince and attempts to coerce."  *Okwedy v. Molinari*, 333 F.3d 339, 344 (2d Cir. 2003).  "A public-official defendant who threatens to employ coercive state power to stifle protected speech violates a plaintiff's First Amendment rights, *regardless of whether the threatened punishment comes in the form of the use (or, misuse) of the defendant's direct regulatory or decisionmaking authority over the plaintiff, or in some less-direct form*."  *Id.* (emphasis added).  Furthermore, "such a threat is actionable and thus can be enjoined even if it turns out to be empty—the victim ignores it, and the threatener folds his tent."  *Backpage.com, LLC*, 807 F.3d at 230.

Feuer's conduct places him squarely on the actionable side of this well-established line.  The complaint does not plead that he is just out to "convince" the Plaintiffs of a political view.  It pleads that he is "actively engaged in an ongoing *coercive* campaign to stop Defense Distributed's publication of the *Defense Distributed I* Files.  Dkt. 23 at 21, ¶ 109 (First Amended Complaint) (hereinafter "FAC") (emphasis added).  The fact of coercion is the key, and it has been pleaded.

1

In addition to this direct allegation of "coercive" and therefore actionable conduct, the complaint details three subsidiary facets of Feuer's activity that make this allegation extremely plausible. These, in addition to the more direct allegation of "coercive" efforts, meet the test.

First, the complaint pleads that Feuer considered Defense Distributed to be violating laws over which he exercised at least some jurisdiction ("California and City law"). FAC ¶ 112. Second, it pleads that Feuer drew a line in the sand by "command[ing] Defense Distributed to cease publishing the Defense Distributed I Files." FAC ¶ 115. Third, it pleads that Feuer intends to take direct coercive action legal action against Defense Distributed as punishment for violating his view of the law. FAC ¶ 113. Specifically, Feuer declared that "the City of Los Angeles intends to move to intervene in Defense Distributed, et al. v. Dep't of State, et al., Case No. 15-cv-372-RP (W.D. Tex.) (the 'Litigation') to seek to enjoin Defense Distributed from publishing its blueprints of firearms and firearm components on the internet." Dkt. 23-10 (incorporated by FAC ¶ 110).

Because of these allegations, Feuer qualifies as "a public official who tries to shut down an avenue of expression of ideas and opinions through '. . . threatened imposition of government power or sanction.'" *Backpage.com, LLC*, 807 F.3d at 230. This "threat is actionable and thus can be enjoined even if . . . the threatener folds his tent" as Feuer purports to have done here. *Id.*

Procedurally, the Plaintiffs' effort to obtain such an injunction is likewise quite orthodox. Standing requirements can be met not just by "actual" injuries, but also by "imminent" injuries. *E.g., Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1548 (2016). Where, as here, the plaintiff has an "actual and well-founded fear that the law will be enforced against them," *Virginia v. Am. Booksellers Ass'n*, 484 U.S. 383, 393 (1988), standing exists even though the defendant has not yet followed through. *See Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 382 (1992) ("*Ex parte Young* thus speaks of enjoining state officers 'who threaten and are about to commence proceedings'"). Plaintiffs did not sue Feuer too late or too early. They sued him right on time.

**ARGUMENT**

I.      **An Article III controversy exists.**

Feuer argues that no Article III controversy exists because Plaintiffs lack standing, their claims are not ripe, and the case is moot. Dkt. 50 at 5-10. He is wrong on each front.

      A.      **Defendant Feuer misconstrues the Washington injunction.**

Feuer bases his ripeness and mootness arguments on a misreading of the Washington court's injunction. Feuer contends that (1) Plaintiffs' claims are not ripe because "Plaintiffs are currently enjoined by the Washington federal court's preliminary injunction from publishing the CAD files;" and that (2) Plaintiffs' claims are moot because their "only alleged injury—interference with publication of the CAD files—is . . . attributable entirely to the injunction in the Washington Action." Dkt. 50 at 8, 10. Both arguments misconstrue the injunction.

The Washington court's injunction is clear. It applies only to that action's *federal government* defendants—the State Department entities. The federal defendants alone are the ones enjoined from "implementing or enforcing the 'Temporary Modification of the United States Munitions List' and the letter to Cody R. Wilson, Defense Distributed, and Second Amendment Foundation issued by U.S. Department of State on July 27, 2018." FAC ¶ 61 (quoting the order).

The Washington court's injunction *does not* enjoin this case's Plaintiffs from publishing the files at issue. Indeed, the Washington court's injunction does not apply to Plaintiffs *at all*. It does not compel the Plaintiffs here to do or not do anything. Nor does the injunction go so far as to compel the federal defendants to prosecute Defense Distributed in the event that Defense Distributed decides to publish the *Defense Distributed I* Files. Nothing of the sort has been ordered. The Washington court's injunction clearly does *not* do anything of the sort that Feuer suggests. As a matter of law, Defense Distributed could publish the *Defense Distributed I* Files today without violating that injunction.

3

Hence, Plaintiffs' injuries do *not* stem from the Washington case's rulings or any other "contingent future events that may not occur as anticipated." *Texas v. United States*, 523 U.S. 296, 300 (1998). Rather, Plaintiffs' injuries stem from the threat of being prosecuted by the Defendants, which deters Plaintiffs from publishing the files at issue. An injunction from this Court *would* remedy that by barring Defendants from following through on their threats. Plaintiffs' claims are ripe - not moot. *See Ohio Civil Rights Com'n v. Dayton Christian Sch., Inc.*, 477 U.S. 619, 626 (1986) ("[A] reasonable threat of prosecution for conduct allegedly protected by the Constitution gives rise to a sufficiently ripe controversy."); *Consumer Data Indus. Ass'n v. King*, 678 F.3d 898, 907 (10th Cir. 2012) ("[R]ipeness is seldom an obstacle to a pre-enforcement challenge . . . where the plaintiff faces a 'credible threat' of enforcement, and 'should not be required to await and undergo enforcement as the sole means of seeking relief.'"); *Vieux Carre Prop. Owners, Residents & Associates, Inc. v. Brown*, 948 F.2d 1436, 1446 (5th Cir. 1991) ("[A] suit is moot only when it can be shown that a court cannot even 'theoretically grant' relief.").

### B. Plaintiffs have standing.

Feuer also challenges Plaintiffs' standing,[1] which requires the Plaintiffs to have "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016). Plaintiffs have satisfied each requirement.

---

[1] Feuer's remaining ripeness arguments—that he never threatened to prosecute Plaintiffs and that Plaintiffs have not identified an unconstitutional statute—also implicitly challenge standing and, therefore, are addressed in this Section. *See Susan B. Anthony List v. Driehaus*, 134 S. Ct. 2334, 2341 n.5 (2014) ("standing and ripeness 'originate' from the same Article III limitation"); *Tex. Cable & Telecomms. Ass'n v. Hudson*, 265 F. App'x 210, 219 (5th Cir. 2008) ("The doctrines of ripeness and standing 'often overlap in practice, particularly in an examination of whether a plaintiff has suffered a concrete injury.'").

### i.  Plaintiffs suffered an injury-in-fact.

Standing law holds that, in a pre-enforcement challenge to state censorship actions, "an actual arrest, prosecution, or other enforcement action is not a prerequisite to challenging the law." *Susan B. Anthony List v. Driehaus*, 134 S. Ct. 2334, 2342 (2014).  Instead, a plaintiff satisfies the injury-in-fact requirement by alleging "'an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute, and . . . a credible threat of prosecution thereunder.'"  *Id.* (quoting *Babbitt v. Farm Workers*, 442 U.S. 289, 298 (1979)).

Here, Plaintiffs alleged an intention to engage in "conduct arguably affected with a constitutional interest"—the publication of the *Defense Distributed I* Files—and Feuer's Letter contends that this conduct is "proscribed by statute."  *See* FAC ¶¶ 112; Dkt. 23-10.[2]  The issue at hand is whether "a credible threat of prosecution" has been pleaded.  It has.

To establish a "credible threat of prosecution," the plaintiff "need cross only a low threshold."  *Int'l Soc. for Krishna Consciousness of Atlanta v. Eaves*, 601 F.2d 809, 821 (5th Cir. 1979).  The Supreme Court has repeatedly held that a plaintiff's reasonable belief that his actions may violate a statute, coupled with the government's refusal to disavow prosecution, are sufficient to establish a credible threat.  *See Virginia v. Am. Booksellers Ass'n, Inc.*, 484 U.S. 383, 392 (1988); *Babbitt*, 442 U.S. at 302; *Doe v. Bolton*, 410 U.S. 179, 188 (1973).

In *Babbitt*, for instance, the plaintiffs challenged a law that banned "dishonest, untruthful, and deceptive publicity" in campaigns to discourage the purchase of agricultural products.  *Babbitt*, 442 U.S. at 302.  The plaintiffs neither violated nor had plans to violate the statute, and the

---

[2] Feuer halfheartedly argues that the FAC "fails to identify any state or local law that they claim is unlawful as applied to them." Dkt. 50. at 9.  This argument ignores the rule that documents attached to a complaint are considered "a part of the pleading for all purposes." Fed. R. Civ. P. 10(c).  Plaintiffs attached Feuer's Letter as an exhibit, and, in it, Feuer spells out several different statutes whose violation Plaintiffs would aid and abet if they published the files. *See* Dkt. 23-10.  Thus, the FAC challenges those statutes as applied to Plaintiffs' conduct.

5

government had never enforced its criminal penalties.  *Id.*  Still, the Court held that the plaintiffs' fear of prosecution was not "imaginary or wholly speculative" because an "'erroneous statement is inevitable in free debate," and "the State ha[d] not disavowed any intention of invoking the criminal penalty provision against [violators].'"  *Id.* at 301–02 (quoting *New York Times Co. v. Sullivan*, 376 U.S. 254, 271 (1964)).  This fear sufficed for Article III standing.  *Id.* at 302.

Here, the complaint readily crosses the "low threshold" needed to allege a "credible threat of prosecution."  *Eaves*, 601 F.2d at 821.  Like in *Babbitt*, Plaintiffs are "not without some reason in fearing prosecution" for violating the laws Feuer identifies in his Letter.  442 U.S. at 302.  Feuer has explained exactly how the publication of these Files would "cause numerous violations" of these laws, Dkt. 23-10, and he has never disavowed prosecuting Plaintiffs for those violations.  442 U.S. at 302.

To the contrary, the Letter and Press Release—which insists that "[t]hese blueprints should not be published under any circumstances," Dkt. 23-11—indicate that he *does* plan to enforce these laws in the event of publication, as it is his "job to enforce the gun laws of the City and California," Dkt. 23-10.  *See Backpage.com, LLC v. Cooper*, 939 F. Supp. 2d 805, 820 (M.D. Tenn. 2013) ("[T]he Court cannot ignore the state's thinly veiled threat to enforce the law against [plaintiff].").  Furthermore, unlike the *Babbit* plaintiffs who did "not plan to propagate untruths" in violation of the statute, Plaintiffs here have concrete plans to publish the files at issue *even if* that conduct would violate the laws Feuer identifies.  In this way, Plaintiffs' allegations are even more supportive of standing than those in *Babbitt*.

Feuer rests his entire case on the absence of an explicit threat.  *See* Dkt. 50 at 7–8.  But of course, Feuer has done just that.  Because the Plaintiffs desire to exercise their First Amendment rights, Feuer promised—threatened—to deploy his official legal authority against the Plaintiffs imminently: "the City of Los Angeles intends to move to intervene in [*Defense Distributed I*] to

6

seek to enjoin Defense Distributed from publishing its blueprints of firearms and firearm components on the internet." Dkt. 23-10 at 1. The threat is right there, plain as day.

Moreover, a defendant need not *expressly* threaten a plaintiff for standing to exist. *See Wisconsin Right to Life, Inc. v. Schober*, 366 F.3d 485, 489 (7th Cir. 2004) ("'A plaintiff who mounts a pre-enforcement challenge to a statute that he claims violates his freedom of speech need not show that the authorities have threatened to prosecute him.'") (citations omitted). Indeed, "courts have often found a credible threat of prosecution against a plaintiff who wishes to engage in constitutionally-protected conduct even though the state never directly threatened to enforce the law against the plaintiff or against anyone." *Deida v. City of Milwaukee*, 192 F. Supp. 2d 899, 907 (E.D. Wis. 2002) (collecting cases). Such threats were present in *American Booksellers*, *Babbitt*, and, most notably, *Doe*, where the Supreme Court pointed out that the plaintiffs suffered an injury even though "the record [did] not disclose that any one of them ha[d] been prosecuted, or *threatened with prosecution*, for violation of the State's . . . statutes." 410 U.S. at 188 (emphasis added); *see also Am. Booksellers*, 484 U.S. at 392 (no mention of explicit threat); *Babbitt*, 442 U.S. at 302 (same). The slight differences between Feuer's threat and those of this case's other defendants do not defeat standing or ripeness.

### ii. Plaintiffs have alleged causation and redressability.

Once a plaintiff pleads a credible threat of prosecution, the remaining standing requirements are easily satisfied. *See Monson v. Drug Enf't Admin.*, 589 F.3d 952, 958 (8th Cir. 2009) ("[W]hen government action is challenged by a party who is a target or object of that action, there is ordinarily little question that the action has caused him injury, and that a judgment preventing the action will redress it." (ellipses omitted)). To satisfy the causation and redressability prongs of the standing test in this context, the plaintiff need only show that "[p]otential enforcement of the statute caused the [plaintiff's] self-censorship, and the injury could

be redressed by enjoining enforcement of the [the applicable statute]." *Ctr. for Individual Freedom v. Carmouche*, 449 F.3d 655, 661 (5th Cir. 2006). In other words, "once a plaintiff has shown more than a 'subjective chill'—that is, that he is seriously interested in disobeying, and the defendant seriously intent on enforcing, the challenged measure—the case presents a viable case or controversy under Article III." *Justice v. Hosemann*, 771 F.3d 285, 291 (5th Cir. 2014).

Plaintiffs have met this threshold by alleging far more than a "subjective chill." They have alleged that, because of the threatened prosecutions from Defendants, they refrained, and continue to refrain, from publishing the files at issue. FAC ¶¶ 116-119. An injunction from this Court would cure that injury by removing the threat of prosecution. Standing requires nothing more. *See Carmouche*, 449 F.3d at 661; *Hosemann*, 771 F.3d at 291.

Next, Feuer claims that his threatened prosecution did not cause Plaintiffs to censor themselves and that a favorable ruling will not redress their injuries because of Defense Distributed's brief posting of the files after Feuer sent the Letter and published the Press Release. *See* Dkt. 50 at 6–7. But this amounts to little more than a denial of the allegations' truth, which at this stage must of course be both believed and construed in the Plaintiffs' favor, *see, e.g.*, *Lane v. Halliburton*, 529 F.3d 548, 557 (5th Cir. 2008); *Truman v. United States*, 26 F.3d 592, 594 (5th Cir. 1994). Plaintiffs have alleged that *all* of the Defendants' conduct, include Feuer's, caused their initial injury. FAC ¶¶ 116-119. And in any event, Plaintiffs are *currently* refraining from publishing the files at issue because of the threatened prosecution from all Defendants, including Feuer. *See id.* Thus, irrespective of whether Feuer's conduct played a role in their initial decision to take down the files at issue, Plaintiffs have alleged it is causing them injury *today*. *See id.*

## II.   The Court has personal jurisdiction over Feuer.

### A.   Feuer established minimum contacts by seeking to intervene in *Defense Distributed I*.

Feuer's objections to personal jurisdiction fail because he sought to intervene in *Defense Distributed I*. To establish personal jurisdiction, a plaintiff need only show that (1) the defendant "'purposely directed its activities toward the forum state or purposefully availed itself of the privileges of conducting activities there; [and] (2) . . . the plaintiff's cause of action arises out of or results from the defendant's forum-related contacts.'" *Monkton Ins. Services, Ltd. v. Ritter*, 768 F.3d 429, 433 (5th Cir. 2014) (citations omitted). The burden then "shifts to [the defendant] to show that exercising jurisdiction would be unfair or unreasonable." *Id.*

Plaintiffs' claims against Feuer stem from the credible threat of prosecution posed by the Letter he sent to this Court in *Defense Distributed I*. They therefore, "result[] from the defendant's forum-related contacts." *Id.* The only question is whether those contacts constitute true purposeful availment. They do.

A person who seeks relief *from a court* in the forum state necessarily engages in purposeful availment. Having asked to come before a court, he should by definition reasonably anticipate being haled into that very court. Indeed, "a non-resident filing a lawsuit in a Texas court" is a "textbook example of a non-resident invoking Texas's benefits and protections" as required for purposeful availment. *Kennedy Ship & Repair, L.P. v. Loc Tran*, 256 F. Supp. 2d 678, 684 (S.D. Tex. 2003) (citing *Gen. Contracting & Trading Co. v. Interpole, Inc.*, 940 F.2d 20, 23–25 (1st Cir. 1991), and *PaineWebber Inc. v. Chase Manhattan Private Bank*, 260 F.3d 453, 460 (5th Cir. 2001)). In fact, *any* "voluntary appearance, by intervention or otherwise," constitutes "an act of consent to personal jurisdiction in this Circuit." *S. Audio Services, Inc. v. Carbon Audio, LLC*, 141 F. Supp. 3d 653, 659 (M.D. La. 2015); *see also Team Worldwide Corp. v. Wal-Mart Stores, Inc.*, 287 F. Supp. 3d 651, 659 (E.D. Tex. 2018) ("[A] motion to intervene is fundamentally

9

incompatible with an objection to personal jurisdiction.") (quoting *Cty. Sec. Agency v. Ohio Dep't of Commerce*, 296 F.3d 477, 483 (6th Cir. 2002)).

*Trans World Airlines, Inc. v. Mattox*, 897 F.2d 773 (5th Cir. 1990), is instructive on this point. There, the plaintiffs sought to enjoin the Attorney General of Texas from enforcing a state statute that conflicted with federal law. *Id.* at 786–87. Sensing that this relief "would interfere with the enforcement of their [own] states' laws," thirty-three other attorneys general filed a motion opposing the requested injunction without formally intervening. *Id.* After the district court granted the motion and extended the injunction to the other states, the attorneys general appealed, challenging personal jurisdiction. *Id.* at 784. In affirming, the Fifth Circuit reasoned that, by "asking the district court to deny the [plaintiffs'] motion for a TRO against enforcement of Texas laws," the attorneys general "sought an affirmative act by the court that would benefit their states. . . . Without being required to do so, they came voluntarily into court and joined with the Attorney General of Texas in seeking dismissal of the injunctive action." *Id.* at 786–87. Through this conduct, the attorneys general "became *de facto* intervenors" and "waived any objection to personal jurisdiction." *Id.* The "form of their appearance" did not matter; it was "[t]he fact that they sought affirmative relief" that "control[led]." *Id.* at 787.

Feuer's conduct parallels that of the *Mattox* defendants. Like them, he "sought affirmative relief" from this Court "that would benefit [his] state[]," *id.*—namely an order "enjoin[ing] Defense Distributed from publishing its blueprints of firearms and firearm components on the internet," Dkt. 23-10 at 1. Through both his letter and the participation of his agents in a hearing, Feuer came "voluntarily into court" "[w]ithout being required to do so" and "joined with [the Proposed Intervenors]" in seeking to block Defense Distributed's exercise of its constitutional rights. *Mattox*, 897 F.2d at 787; *see also O'Quinn v. World Indus. Const.*, 68 F.3d 471 (5th Cir. 1995) ("[A] defendant may be found subject to personal jurisdiction as a result of the actions of an

10

agent."). Thus, just as the attorneys general in *Mattox* waived their jurisdictional objections through nearly identical conduct, Feuer's actions here constitute purposeful availment sufficient to support personal jurisdiction. *Mattox*, 897 F.2d at 786–87.[3]

      **B.**     ***Stroman Realty* and the government contracts doctrine do not apply.**

Feuer cites *Stroman Realty, Inc. v.* Wercinski, 513 F.3d 476 (5th Cir. 2008), and the government contacts doctrine in an attempt to defeat personal jurisdiction. Neither applies. *Stroman Realty* is easily distinguishable because that defendant did not seek to intervene in a related lawsuit in Texas as Feuer did here.

The government contacts doctrine, meanwhile, is a creature of "D.C. law" that "'precludes the assertion of personal jurisdiction over a non-resident whose only contact with the District of Columbia is with Congress or a federal agency.'" *Capel v. Capel*, 272 F. Supp. 3d 33, 40 (D.D.C. 2017). The doctrine "finds its source in the unique character of the District [of Columbia] as the seat of national government and in the correlative need for unfettered access to federal departments and agencies for the entire national citizenry." *Envtl. Research Intern., Inc. v. Lockwood Greene Engineers, Inc.*, 355 A.2d 808, 813 (D.C. 1976). The doctrine generally does not apply outside the nation's capital, and, on the rare occasion that it does, it is because the sole basis for jurisdiction is the defendant's contact with a legislative or executive entity rather than a federal district court.

---

[3] That Feuer sought to intervene in a related matter in this Court rather than the instant case does not change this result because the cases arise from the same general set of facts. *See PaineWebber*, 260 F.3d at 460 (indicating that a party purposefully avails itself of jurisdiction if it "has chosen to commence . . . a *related action* in the very forum in which it is contesting personal jurisdiction" (citing *Interpole*, 940 F.2d at 21) (emphasis added)); *Int'l Transactions, Ltd. v. Embotelladora Agral Regionmontana SA de CV*, 277 F. Supp. 2d 654, 667 (N.D. Tex. 2002) ("'[V]oluntarily filing a lawsuit in a jurisdiction is a purposeful availment of the jurisdiction's facilities and can subject a party to personal jurisdiction *in another lawsuit* when the lawsuits arise *from the same general transaction*.'" (emphasis added) (citations omitted)). Nor does it matter that Feuer's motion to intervene was denied. By *attempting* to obtain a benefit from this Court, Feuer should have reasonably anticipated being haled into court here. *See Mattox*, 897 F.2d at 787 ("The fact that [the attorneys general] *sought* affirmative relief controls, not the form of their appearance." (emphasis added)) .

11

*See, e.g., Klinghoffer v. S.N.C. Achille Lauro Ed Altri-Gestione Motonave Achille Lauro in Amministrazione Straordinaria*, 937 F.2d 44, 51 (2d Cir. 1991). As the rule recognizes, a nonresident should not have to fear that contact with such entities will expose him to a forum state's *courts*. *See id.* (noting that government contacts rule is based in part on the "Judiciary's reluctance to interfere with the smooth functioning of other governmental entities"). This rationale does not apply, however, when a nonresident petitions those same federal courts. On the contrary, it strains credulity to argue that a nonresident who affirmatively seeks relief from a court in a given forum is *not* subject to that court's jurisdiction. *See Mattox*, 897 F.2d at 786–87; *Cty. Sec. Agency*, 296 F.3d at 483; *Interpole, Inc.*, 940 F.2d at 21–24; *PaineWebber*, 260 F.3d at 460.

### III. Venue is proper.

Feuer repackages his personal jurisdiction arguments in order to challenge venue. But because this Court has personal jurisdiction over him, venue is proper.

Specifically, venue is proper under 28 U.S.C. § 1391(b)(2), which authorizes lawsuits in the district where "a substantial part of the events or omissions giving rise to the claim occurred." This provision does not require "'that the chosen venue be the best venue.'" *Zurich Am. Ins. Co. v. Tejas Concrete & Materials Inc.*, 982 F. Supp. 2d 714, 722 (W.D. Tex. 2013). Instead, venue is proper so long as the "'selected district . . . [has] a substantial connection to the claim.'" *Id.*

The Western District of Texas satisfies this test because Plaintiffs' claim against Feuer is based on a prosecution that Feuer threatened to conduct in Texas by sending a letter to Texas, *see Bounty-Full Entm't, Inc. v. Forever Blue Entm't Group, Inc.*, 923 F. Supp. 950, 958 (S.D. Tex. 1996) (venue proper in Southern District of Texas where action was based on a letter sent by nonresident to Houston), and because the conduct for which Feuer has threatened to prosecute Defense Distributed occurred entirely in Austin, *see Jalloh v. Underwood*, 300 F. Supp. 3d 151, 155 (D.D.C. 2018) (venue proper in district where the alleged crime underlying the malicious

12

prosecution of the plaintiff occurred). These facts are more than enough to create a "substantial connection" between this District and Plaintiffs' claims.[4]

### IV. The *Noerr-Pennington* doctrine does not warrant dismissal.

The *Noerr-Pennington* doctrine does not warrant dismissal. *See* Dkt. 50 at 15-17. In some contexts, that doctrine "holds that the right to petition the government for redress is generally immune from antitrust liability unless the petitioning activity is a 'sham.'" *Bryant v. Military Dep't of Mississippi*, 597 F.3d 678, 690 (5th Cir. 2010). But even if the doctrine applies to the Section 1983 context (although the Fifth Circuit has held that, the Supreme Court has not, and Plaintiffs do not concede that an extension is warranted, *see Bayou Fleet, Inc. v. Alexander*, 234 F.3d 852, 859 (5th Cir. 2000)), it does not protect Feuer because this is *not* a case seeking to hold Feuer liable for having petitioned the government for redress.

The Plaintiffs are *not* trying to hold Feuer liable for the conduct that he says is protected by *Noerr-Pennington*. Indeed, this is not an action for retrospective damages of any kind. It is an *Ex parte Young* action seeking to enjoin threatened violations of the Plaintiffs' constitutional rights. But the Plaintiffs are *not* trying to enjoin the conduct that Feuer says is protected. They are *not* basing liability on the letter and press release that Feuer says constitute petitions, Dkt. 50 at 16, and they are *not* basing liability on the act of "[l]istening to a public hearing" that Feuer says is a protected act, Dkt 50 16-17. Those actions are relevant to the case, but not because they

---

[4] Section 1391(b)(1) does not apply because defendants do not reside in the same State. *See* 28 U.S.C. § 1391(b)(1) (venue is proper in the "district in which any defendant resides, if all defendants are residents of the State in which the district is located"). As such, should the Court conclude that Section 1391(b)(2) does not apply because "the event[] . . . giving rise to the claim"—*i.e.* the threatened and therefore imminent prosecution of Defense Distributed—has not "occurred" yet, venue is proper in this District under Section 1391(b)(3). *See* 28 U.S.C.A. § 1391(b)(3) ("[I]f there is no district in which an action may otherwise be brought as provided in this section, [venue is proper in] any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.").

13

themselves are the actionable conduct. They are relevant only insofar as they show the kind of actionable conduct that *is about to take place*.

In other words, there is a crucial difference between using protected activity as evidence in a case and using protected activity as the basis for liability. The only activities that Feuer claims *Noerr-Pennington* protection for are being used as mere evidence—not a source of liability.

Feuer's liability—the conduct that this action seeks to have enjoined—is the act of suing the Plaintiffs to stop their distribution of the *Defense Distributed I* Files. Feuer's motion does *not* say that that lawsuit—the one that Plaintiffs actually seek to enjoin here—is protected by the *Noerr-Pennington* doctrine, and for good reason. That extraordinary notion is totally unprecedented and proves far too much, for it would immunize defendants from Section 1983 liability in a wide-range of cases that courts have long acknowledged are proper. Feuer may have the right to *say* that he is about to violate the Plaintiffs constitutional rights. But he does not have the right to go forward and commit the violation by initiating that lawsuit.

Where, as here, a state official is on the verge of going into court to censor citizens in violation of the First Amendment, *Noerr-Pennington* does *not* cloak them with immunity and allow the suppression to occur. Rather, Section 1983 and *Ex parte Young* stand for the proposition that such official abuses are to be enjoined. Lawsuits aimed at securing this kind of relief are common practice,[5] and Feuer cites no authority holding that they are precluded by *Noerr-Pennington* because they are not. See Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 382 (1992) ("*Ex parte Young* thus speaks of enjoining state officers 'who threaten and are about to commence proceedings'").

---

[5] *See, e.g.*, *Driehaus*, 134 S. Ct. at 2342; *Seals v. McBee*, 898 F.3d 587, 592 (5th Cir. 2018); *Nat'l Rifle Ass'n of Am., Inc. v. McCraw*, 719 F.3d 338, 345 (5th Cir. 2013); *Speaks v. Kruse*, 445 F.3d 396, 399 (5th Cir. 2006).

## V.	The TCPA does not warrant any relief.

Finally, Feuer invokes the Texas Citizens Participation Act ("TCPA") for two purposes. Dkt. 50 at 17-18.  First, he argues that the TCPA entitles him to an order dismissing Count Seven, the Plaintiffs' claim for tortious interference with the Settlement Agreement.  Dkt. 50 at 17.  Second, he argues that if the TCPA warrants that dismissal, it also warrants an award of attorney's fees and costs and unspecified sanctions.  Dkt. 50 at 18.  The Court should reject both arguments.

The Fifth Circuit has never held that the TCPA applies in federal court.  This is no secret.  Many Fifth Circuit opinions have recognized this and note that the issue remains unresolved. *E.g.*, *Diamond Consortium, Inc. v. Hammervold*, 733 F. App'x 151, 154 n.3 (5th Cir. 2018).

Feuer's motion fails to acknowledge the existence of this critical threshold issue, let alone supply a cogent argument about it.  The motion invokes no federal authority about the TCPA whatsoever, citing only the statute itself and a lone Texas case (for an uncontroversial proposition).

 Motions ought to justify the laws they invoke.  But Feuer's pleading does not even try to do so despite an obvious need for serious treatment.  Feuer's failure to state why the TCPA applies to this federal case in the first place should be fatal to the argument, regardless of its merit.

If the Court deems the issue worthy of a merits holding, it should conclude that the answer is no – the TCPA does not apply here.  Here in the Western District of Texas, this is no longer an open question.  It has been resolved decisively in the Plaintiffs' favor.

This Court recently rendered a conclusive opinion about this issue.  In *N.P.U., Inc., d/b/a/ NE Plus Ultra v. Wilson Audio Specialties*, No. 1:18-CV-167-RP, 2018 WL 5504239 (W.D. Tex. Oct. 29, 2018), the Court held that the TCPA does *not* apply in federal court.  This case's TCPA issue is indistinguishable from *N.P.U.*'s.  It warrants the same conclusion.  The Court should reaffirm its *N.P.U.* holding and reject Feuer's invocation of the TCPA in this action altogether.

15

## CONCLUSION

The motion should be denied.

Date: November 23, 2018

Respectfully submitted,

BECK REDDEN LLP
By /s/ Chad Flores
Chad Flores*
cflores@beckredden.com
State Bar No. 24059759
1221 McKinney St., Suite 4500
Houston, TX 77010
(713) 951-3700 | (713) 952-3720 (fax)

FARHANG & MEDCOFF
Matthew Goldstein*
mgoldstein@fmlaw.law
D.C. Bar No. 975000
4801 E. Broadway Blvd., Suite 311
Tucson, AZ 85711
(202) 550-0040 | (520) 790-5433 (fax)

Josh Blackman
joshblackman@gmail.com
Virginia Bar No. 78292
1303 San Jacinto Street
Houston, TX 77002
(202) 294-9003 | (713) 646-1766 (fax)

*Admitted *pro hac vice*

Attorneys for Plaintiffs Defense Distributed and Second Amendment Foundation, Inc.

## CERTIFICATE OF SERVICE

On November 23, 2018, I served this filing on the following persons via CM/ECF:

    Counsel for Defendants Gurbir S. Grewal and Matthew Denn
    Kenneth W. Taber
    Ronald Casey Low

    Counsel for Defendant Michael Feuer
    Connie K. Chan
    James P. Clark
    Michael M. Walsh
    Jason P. Steed

    Counsel for Defendants Josh Shapiro and Thomas Wolf
    J. David Cabello
    John D. Kimball

    Counsel for Defendant Andrew Cuomo
    Pete Marketos
    Tyler Bexley

    Counsel for Plaintiffs
    Chad Flores
    Matthew A. Goldstein
    Joshua Michael Blackman


/s/ *Chad Flores*
Chad Flores