IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| DEFENSE DISTRIBUTED, et al., | § § § | |
| Plaintiffs, | § § | |
| v. | § § | 1:18-CV-637-RP |
| GURBIR GREWAL, in his official capacity as New Jersey Attorney General, et al., | § § § § | |
| Defendants. | § § | |

## ORDER

Before the Court is Plaintiffs' second Motion for a Temporary Restraining Order ("TRO") against Defendant Gurbir Grewal, in his official capacity as New Jersey Attorney General. (Second Mot. TRO, Dkt. 66). Plaintiffs again request that the Court enjoin enforcement of Section 3(l)(2) of New Jersey Senate Bill 2465, which provides for third degree criminal penalties for distributing digital instructions that may be used to print firearms and firearm components from a three-dimensional printer. Plaintiffs have filed this second TRO because, in their view, the Court's prior order denying Plaintiffs' first motion for a TRO, (Order Denying TRO, Dkt. 53), "rests on a critical misimpression," (Second Mot. TRO, Dkt. 66, at 1). Having considered the instant motion and applicable law, the Court disagrees. For the same reasons given in its prior order, the Court will again deny Plaintiffs the extraordinary relief of a TRO.

### I. BACKGROUND

#### A. The New Jersey Law

The facts of the instant motion are substantially the same as those in Plaintiffs' first motion for a TRO. (Dkt. 52). Plaintiff Defense Distributed is a Texas corporation that is "committed to legally publishing information about firearms to the public domain on the internet by hosting computer files on its website and making them available to visitors for download." (*Id.* at 3). Plaintiff

Second Amendment Foundation, Inc. is a non-profit organization whose members seek to obtain the information published by Defense Distributed. (First Am. Compl., Dkt. 23, at 4). On June 29, 2018, Plaintiffs entered into a settlement agreement with the United States Department of State concerning the publication of four categories of computer files related to firearms and subject to the Arms Export Control Act and the International Traffic in Arms Regulations (the "*Defense Distributed I* files"). (*Id.* at 7–9). The Settlement Agreement would have permitted the publication of the *Defense Distributed I* files on the Internet. (*See id.* at 9–10). On June 30, 2018, several States and the District of Columbia filed suit in the United States District Court for the Western District of Washington, seeking to enjoin enforcement of the Settlement Agreement. (*Id.* at 13). The court granted the injunction the next day, and Defense Distributed ceased publishing the *Defense Distributed I* files on the Internet. (*Id.* at 14).

Subsequently, New Jersey passed Senate Bill 2465 on November 8, 2018. In relevant part, Section 3(l)(2) of Senate Bill 2465 provides for third degree criminal penalties for:

> a person to distribute by any means, including the Internet, to a person in New Jersey who is not registered or licensed as a manufacturer as provided in chapter 58 of Title 2C of the New Jersey Statutes, digital instructions in the form of computer-aided design files or other code or instructions stored and displayed in electronic format as a digital model that may be used to program a three-dimensional printer to manufacture or produce a firearm, firearm receiver, magazine, or firearm component.

(SB 2465 § 3(l)(2); First Mot. TRO, Ex. B, Dkt. 52-1, at 15). The subsection further provides:

> As used in this subsection: "three-dimensional printer" means a computer or computer-driven machine or device capable of producing a three-dimensional object from a digital model; and "distribute" means to sell, or to manufacture, give, provide, lend, trade, mail, deliver, publish, circulate, disseminate, present, exhibit, display, share, advertise, offer, or make available via the Internet or by any other means, whether for pecuniary gain or not, and includes an agreement or attempt to distribute.

*Id.*

## 2. The Court's Prior Denial of a TRO

On November 9, 2018, the day after Senate Bill 2465 was passed, Plaintiffs Defense Distributed and Second Amendment Foundation, Inc. filed their first motion for a TRO before this Court, seeking to enjoin enforcement of Section 3(l)(2) because the law allegedly violates the First Amendment, Commerce Clause, and Supremacy Clause of the United States Constitution. (Dkt. 52, at 2). The Court denied that motion on November 13, 2018, finding that the New Jersey law was susceptible of a fair reading that avoided Plaintiffs' constitutional challenge and therefore concluding that *Pullman* abstention was appropriate. (*See* Order Denying TRO, Dkt. 53, at 3–4) (citing *United Home Rentals, Inc. v. Tex. Real Estate Com.*, 716 F.2d 324, 331 (5th Cir. 1983), *World of Faith World Outreach Ctr. Church, Inc. v. Morales*. 986 F.2d 962, 968 (5th Cir. 1993)). In particular, the Court determined that Plaintiffs' challenge to Section 3(l)(2) fit the bill of "[o]ne type of case almost universally recognized as appropriate for abstention[:] . . . a state statute, not yet construed by the state courts, which is susceptible of one construction that would render it free from federal constitutional objection and another that would not." (*Id.* at 3) (citing *United Home Rentals*, 716 F.2d at 331 (quoting Friendly, FEDERAL JURISDICTION: A GENERAL VIEW, 93 (1973))). Accordingly, the Court construed Section 3(l)(2) to the extent necessary to determine whether it was "susceptible of a construction by the state judiciary that would avoid or modify the necessity of reaching the federal constitutional question." (*Id.* at 4) (quoting *Kusper v. Pontikes,* 414 U.S. 51(1973)).

The Court construed Section 3(l)(2) to reach only the distribution of "[1] digital instructions [2] in the form of computer-aided design files or other code or instructions stored and displayed in electronic format as a digital model [3] that may be used to program a three-dimensional printer to manufacture of produce a firearm, firearm receiver, magazine, or firearm component." (*Id.* at 4–5)

(quoting SB 2465 § 3(l)(2)). Under this reading of the statute, the Court found that Plaintiffs had not alleged that they were engaged in "distribution" within the three enumerated limitations highlighted above. (*Id.* at 5). The Court therefore did not need to reach Plaintiffs' federal constitutional challenges to determine that Plaintiffs had failed to show they were entitled to a TRO. (*Id.* at 7). Accordingly, Section 3(l)(2) was fairly susceptible to an interpretation that negated the need to reach Plaintiffs' constitutional challenges, and so abstention was appropriate.

Now on their second motion for a TRO, Plaintiffs reassert that Section 3(l)(2) "unquestionably criminalizes conduct that Defense Distributed engages in." (Second Mot. TRO, Dkt. 66, at 2). Plaintiffs do not allege that they are or have been engaged in conduct not already brought to the Court's attention pursuant to their first motion for a TRO.[1] Rather, Plaintiffs bring this second motion to correct the "critical misimpression" regarding Plaintiffs' activities upon which the Court's prior order rests. (*Id.* at 1). Plaintiffs' second motion therefore relies again on the assertion that Section 3(l)(2) "unquestionably criminalizes conduct that Defense Distributed engages

---

[1] So that there is no ambiguity, the full list of activities Plaintiffs alleged would be halted by enforcement of Section 3(l)(2) is as follows, taken verbatim from Plaintiffs' first TRO motion: "public accessibility of files on the DEFCAD website; participating in trade shows where Plaintiffs are unable to determine the state of residence of attendees that may view their displays and other advertisements; sending advertisements via email lists where Plaintiffs are unable to determine the states of residence of the recipients and have no way of knowing in which states recipients will be when they receive emails; and participation in any national advertising network, radio communication, televised media, and other media that may advertise and promote Plaintiffs' respective missions." (First Mot. TRO, Dkt. 52, at 20).

Although Plaintiffs do not provide a revised list of activities in their second TRO motion, they do provide this list in conjunction with their motion for a preliminary injunction, filed concurrently with the second TRO motion. The Court therefore construes the list of activities provided in the motion for a preliminary injunction to apply in the same way for the requested TRO. That list, verbatim, is as follows: "posting digital firearms information on the DEFCAD website for free download by the public; selling digital firearms information to persons in New Jersey on the DEFCAD website for shipment on USB drive or SD cards mailed via the U.S. Postal Service; advertising its digital firearms information offerings on the DEFCAD website; participating in trade shows where Defense Distributed is unable to determine the state of residence of attendees that may view its displays and other advertisements; sending advertisements via email lists where Defense Distributed is unable to determine the state of residence of the recipients and has no way of knowing in which states recipients will be when they receive emails; and participating in any national advertising network, radio communication, televised media, and other media that may advertise and promote Plaintiffs' respective missions." (Heindorff Decl., Dkt. 65-26, at 8–9) (cleaned up).

in." (*Id.* at 2). As before, the statute has still not been construed by any court in the State of New Jersey.

## II. LEGAL STANDARD

The party moving for a temporary restraining order ("TRO") must establish that: "(1) there is a substantial likelihood that the movant will prevail on the merits; (2) there is a substantial threat that irreparable harm will result if the injunction is not granted; (3) the threatened injury outweighs the threatened harm to the defendant; and (4) the granting of the [TRO] will not disserve the public interest." *Clark v. Prichard*, 812 F.2d 991, 993 (5th Cir. 1987). "A [TRO] is an extraordinary remedy and should only be granted if the plaintiffs have clearly carried the burden of persuasion on all four requirements." *Nichols v. Alcatel USA, Inc.*, 532 F.3d 364, 372 (5th Cir. 2008) (citation and quotation marks omitted).

## III. DISCUSSION

Now on its second motion for a temporary restraining order, Plaintiffs argue that they *are* engaged in distribution within the meaning of the statute and therefore ask the Court to reconsider several aspects of its prior ruling. Plaintiffs' new and renewed arguments, however, suffer from the same central defect in their first attempt to obtain a TRO: they fail to demonstrate a likelihood of irreparable harm from the enforcement of Section 3(l)(2).

### A. Imminent Harm

First, Plaintiffs take issue with the Court's prior conclusion that Plaintiffs had not "specif[ied] the kinds of files allegedly accessible on the DEFCAD website, or what, if any, speech they entail." (Second Mot. TRO, Dkt. 66, at 3) (quoting Order Denying TRO, Dkt. 53, at 6). The Court made this conclusion in the course of determining that "the irreparable harm Plaintiffs allege they will suffer is unlikely and speculative." (Order Denying TRO, Dkt. 53, at 6). "An injunction is appropriate only if the anticipated injury is imminent and irreparable," *Chacon v. Granata*, 515 F.2d

5

922, 925 (5th Cir. 1975) (citing O. Fiss, INJUNCTIONS 3, 9 et seq. (1972)), and harm that is not imminent is speculative, *McGuffey v. Tucker*, 2018 U.S. Dist. LEXIS 147200, at *4 (E.D. Tex. July 24, 2018).

Plaintiffs assert that their first amended complaint specifies the kinds of files allegedly accessible on the DEFCAD website, and point to paragraphs 30 through 34 of the complaint in which the *Defense Distributed I* Files are described "in great detail." (Second Mot. TRO, Dkt. 66, at 4–5). These are the kinds of files Plaintiffs assert Defense Distributed "will be 'distributing' within the meaning of Section 3(l)(2)." (*Id.* at 5). However, Plaintiffs also indicate in a letter to the New Jersey Assistant Attorney General, submitted with their first motion for a TRO, that:

(1) Defense Distributed removed the files at issue in this litigation from its website after a temporary restraining order was issued in *State of Washington, et al., v. United States Department of State, et al.*, No. C18-1115RSL (W.D. Wash.);
(2) The files at issue in that case are the files at issue in this case;
(3) It remains true that Defense Distributed took down these files when the Washington Court's injunction was entered; and
(4) Defense Distributed will maintain that state of affairs until the Western District of Washington's injunction is dissolved or Defense Distributed is otherwise relieved of effect by a court of competent jurisdiction.

(First Mot. TRO, Ex D., Dkt. 52-4, at 3). In the next paragraph in the letter, Defense Distributed also states that, with respect to uploading "any additional files," the "foregoing explanation" addresses Defense Distributed's "obligation." (*Id.*).

To state the obvious first, the Court notes that the above letter plainly indicates that the *Defense Distributed I* Files are *not* presently accessible on the DEFCAD website. The Court was aware of this fact when it concluded in its previous order that Plaintiffs had failed to "specify the kinds of files allegedly accessible on the DEFCAD website." (Order Denying TRO, Dkt. 53, at 6). This conclusion, moreover, specifically addressed one of the activities Plaintiffs enumerated in their first motion for a TRO that would be threatened by enforcement of Section 3(l)(2), namely, "public

accessibility of files *on the DEFCAD website*." (First Mot. TRO, Dkt. 52, at 20) (emphasis added). The *Defense Distributed I* Files are not those files. Accordingly, Plaintiffs' contention that the Court was incorrect to conclude that Plaintiffs "had not 'specif[ied] the kinds of files allegedly accessible on the DEFCAD website" because "the complaint does just that" is plainly false. The paragraphs Plaintiffs point to in the complaint describe files that Plaintiffs admit are *not* on the DEFCAD website.

Second, Plaintiffs' argument fails to demonstrate that Plaintiffs are likely to suffer *imminent* irreparable harm. Plaintiffs describe the *Defense Distributed I* Files in an attempt to "show[] how" the files they seek to distribute "clearly meet the statute's 'digital instruction' definition." (Second Mot. TRO, Dkt. 66, at 3). But, Plaintiffs offer this comparison to the *Defense Distributed I* Files to "exemplify" what kinds of files Defense Distributed "intends to develop and share in the future." (*Id.* at 4). By "future," Plaintiffs mean "soon." (*Id.*). This vague assertion fails to overcome Plaintiffs' "heavy burden" to "[c]learly demonstrat[e] irreparable injury." *Enterprise Int'l, Inc. v. Corporacion Estatal Petrolera Ecuatoriana*, 762 F.2d 464, 472 (5th Cir. 1985). For purposes of a TRO or preliminary injunction, such injury must be imminent. *Chacon,* 515 F.2d at 925; *Tucker*, 2018 U.S. Dist. LEXIS 147200, at *4 (harm that is not imminent is speculative and does not satisfy the irreparable harm standard); *Saia Motor Freight Lines, Inc. v. Benesight, Inc.*, 2001 U.S. Dist. LEXIS 16609, at *18 (E.D. La. 2001) (preliminary injunction not required to preserve the status quo if there is no imminent threat of harm). The Court also notes that in the 25 days between Plaintiffs' first motion for a TRO and its second one, the State of New Jersey does not appear to have taken any action against Plaintiffs pursuant to Section 3(l)(2). This delay further buttresses the Court's initial conclusion that the harm Plaintiffs allege is speculative.

Next, Plaintiffs argue that they will suffer irreparable harm by the enforcement of Section 3(l)(2) because, on Plaintiffs' reading, the statute reaches Defense Distributed's distribution of "instructions about 3D printing firearms via U.S. Mail." (Second Mot. TRO, Dkt. 66, at 6).

7

Specifically, Plaintiffs assert that Defense Distribute mails to "certain U.S. persons" "a USB drive or SD card" containing "the same files that Defense Distributed distribute[s] online." (*Id.*). This argument does not alter either the Court's conclusion that Plaintiffs have failed to specify the speech content of the activities Plaintiffs claim will be halted by Section 3(l)(2), or that the alleged harm is imminent. Plaintiffs adduce a new list of enumerated activities that will allegedly be halted by Section 3(l)(2), but this list is substantially the same as the list provided in Plaintiffs' first motion for a TRO. (*Compare* Heindorff Decl., Dkt. 65-26, at 8–9, *with* First Mot. TRO, Dkt. 52, at 20). The only significant addition to the new list is the term "digital firearms information," (Heindorff Decl., Dkt. 65-26, at 8–9), but the exhibit does not indicate that this "digital firearms information" is "[1] in the form of computer-aided design ["CAD"] files or other code or instructions stored and displayed in electronic format as a digital model [2] that may be used to program a three-dimensional printer to manufacture of produce a firearm, firearm receiver, magazine, or firearm component," (SB 2465 § 3(l)(2)), as required to fall within the ambit of Section 3(l)(2). Moreover, Exhibits F and G to Exhibit 26 suggest that these files are *not* being mailed "to residents of and persons in the following blue states: New Jersey . . ." (Dkt. 65-26, at 44). Taken together, it is unclear to the Court whether Defense Distributed is distributing CAD files or other code to New Jersey citizens, such that New Jersey is likely to enforce Section 3(l)(2) against it. The Court therefore finds that Plaintiffs have again failed to demonstrate that they are likely to suffer imminent irreparable harm.

      Finally, Plaintiffs argue that Section 3(l)(2) reaches Defense Distributed's "offers and advertisements [of] its digital firearms" because the statute "does not turn on whether actual sharing of digital firearms information occurs." (Second Mot. TRO, Dkt. 66, at 7–8). The Court is perplexed by the Plaintiffs' focus on "sharing" because that concept had nothing to do with the Court's prior construction of the statute. Plaintiffs refer to the Court's "skepticism that displays at a trade show, advertisements, and media campaigning about the Plaintiffs' missions involve the distribution of

8

digital instructions in the form of computer-aided design files or other code." (*Id.* at 7) (quoting Order Denying TRO, Dkt. 53, at 6) (cleaned up). But, as is plainly evident from the quoted sentence, the Court's skepticism was (and is) based on the fact that the specified methods of disseminating information likely do not involve the distribution of CAD or other code. "Sharing" has nothing to do with it. Exhibits F and G to Exhibit 26, moreover, confirm the Court's skepticism: the advertisements refer to CAD files but are not CAD files themselves and are not otherwise in the form of a code to store and display instructions in electronic format as a digital model. (SB 2465 § 3(l)(2)).

In sum, Plaintiffs new and renewed arguments do not satisfy their "heavy burden" to "[c]learly demonstrat[e] irreparable injury." *Enterprise Int'l*, 762 F.2d at 472. Accordingly, Plaintiffs have again failed to show that they are entitled to the extraordinary relief of a TRO.

### B. Abstention

Plaintiffs also argue that abstention is not warranted. (Second Mot. TRO, Dkt. 66, at 8). Plaintiffs' argument relies on the fact that "the current record" "now identifie[s] with particularity" the speech content at issue in this case. (*Id.* at 9). For the reasons given above, the Court disagrees. The Court also disagrees with Plaintiffs' characterization that the Court "acknowledged that abstention was not warranted 'in cases involving facial challenges to the First Amendment." (*Id.*) (citing Order Denying TRO, Dkt. 53, at 7, quoting *Houston v. Hill*, 482 U.S. 451, 467 (1987)). What the Court acknowledged was a "general reluctance" to abstain in cases involving facial challenges to the First Amendment, and the Court did so before explaining that the basis for this reluctance is not compelling in this case. (Order Denying TRO, Dkt. 53, at 7). A cry for the First Amendment is not a magic incantation sufficient to render abstention inappropriate; indeed, the Supreme Court has ruled that abstention is appropriate in the First Amendment context when the interpretation of state law "turns upon the choice between one or several alternative meanings of [the] state statute." *Babbitt v.*

9

*UFW Nat'l Union*, 442 U.S. 289, 307–09 (1979) (quoting *Baggett* v. *Bullitt*, 377 U.S. 360, 378 (1964); citing *Harrison v. NAACP*, 360 U.S. 167, 176 (1959)). Instead, the courts' "general reluctance" arises where the delay in resolution of a First Amendment challenge attending abstention may result in the "impermissible chilling of the very constitutional right" the plaintiff seeks to protect. (*Id.*) (quoting *Zwickler v. Koota*, 389 U.S. 241, 252 (1967)). Because the Court again finds that Plaintiffs have failed to demonstrate a likelihood of imminent irreparable harm—that is, failed to demonstrate a likelihood that their speech will be chilled in the absence of a TRO—the Court again concludes that abstention is not unwarranted merely because a First Amendment challenge is at stake.

Further, the Court rejects Plaintiffs' suggestion that because *United Home Rentals, Inc. v. Texas Real Estate Commission*, 716 F.2d 324 (5th Cir. 1983), is thirty years old and has not been subsequently cited, it "is not controlling." (Mot., Dkt. 66, at 10). Plaintiffs dredge up several distinctions without a difference between *United Home Rentals* and this case while ignoring the Fifth Circuit's crucial recognition that:

> One type of case almost universally recognized as appropriate for abstention is that of a state statute, not yet construed by the state courts, which is susceptible of one construction that would render it free from federal constitutional objection and another that would not. A federal court should not place itself in the position of holding the statute unconstitutional by giving it the latter construction, only to find that the highest court of the state will render the decision futile and unnecessary by adopting the former.

*Id.* at 331–32 (quoting Friendly, FEDERAL JURISDICTION: A GENERAL VIEW, 93 (1973)). *United States Rentals* remains the law of this Circuit and is appropriate here.

Finally, to the extent Plaintiffs argue abstention is unwarranted because "New Jersey's Attorney General is not willing to engage in a process of negotiation and compromise with the Plaintiffs," the Court declines to accept this accusation until Defendant Grewal has had an opportunity to defend himself in the instant matter.

### III. CONCLUSION

Accordingly, for the reasons stated above, the Court will not reconsider its prior order denying Plaintiffs a temporary restraining order. Once again, the Court **ABSTAINS** from reviewing this matter until the New Jersey courts have been "afforded a reasonable opportunity to pass upon" Section 3(l)(2). *Id.* (quoting *Harrison v. NAACP*, 360 U.S. 167, 176 (1959)). The Second Motion for a TRO is **DENIED**.

**SIGNED** on December 6, 2018.

ROBERT PITMAN
UNITED STATES DISTRICT JUDGE