IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| DEFENSE DISTRIBUTED and SECOND AMENDMENT FOUNDATION,<br><br>*Plaintiffs,*<br><br>v.<br><br>GURBIR S. GREWAL, in his official capacity as the State of New Jersey's Attorney General ; MICHAEL FEUER, in his official capacity as the City of Los Angeles, California's City Attorney; ANDREW CUOMO, in his official capacity as the State of New York's Governor; MATTHEW DENN, in his official capacity as the State of Delaware's Attorney General; JOSH SHAPIRO, in his official capacity as the Commonwealth of Pennsylvania's Attorney General; and THOMAS WOLF, in his official capacity as the Commonwealth of Pennsylvania's Governor,<br><br>*Defendants.* | Case No. 1:18-CV-637 |

**DEFENDANT MICHAEL FEUER'S REPLY IN SUPPORT OF HIS MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT**

Plaintiffs' Response (Dkt. 59) tries to distract from two core, indisputable facts: (1) Plaintiffs are currently prohibited by federal law from publishing their CAD Files on the internet and have disavowed any intention to violate federal law while the Washington Court's preliminary injunction ("Washington Injunction") remains intact; and (2) Defendant Feuer's only two actions were constitutionally protected petitions to the Federal Government, not communications directed to Plaintiffs or any other private citizens.

These two facts distinguish this case from all those cited by Plaintiffs. The first precludes Plaintiffs from establishing standing to bring their pre-enforcement claims, and the second precludes any finding of actionable coercion. Plaintiffs argue the City Attorney's speech crossed the line from "'attempts to convince'" to "'attempts to coerce'" (Resp. at 1), but their analogy to *Backpage.com LLC v. Dart*, 807 F.3d 229 (7th Cir. 2015) and *Okwedy v. Molinari*, 333 F.3d 339 (2d Cir. 2003) – both of which involved letters to private entities – is misplaced. The line between lawful speech and unlawful coercion may sometimes be difficult to discern, but it blazes brightly where, as here, the speech is directed at the Federal Government, not private citizens.

True, the City Attorney's objective was to prevent the unchecked online distribution of the CAD Files, for the reasons stated in the Letter to the Court and Press Release. But he pursued this objective not by bullying Defense Distributed into submission, but rather by lawfully petitioning the State Department and the Court not to modify existing federal regulations already prohibiting such publication. Plaintiffs' contention that statements in a local official's constitutionally protected petitions can be sufficient to establish a "credible threat of prosecution" or construed as actionable coercion, if accepted, would eviscerate the line between "government expression and intimidation" altogether and paralyze local officials from exercising their fundamental First Amendment right to speak on matters of public concern.

1

Lacking both subject matter and personal jurisdiction, the Court should dismiss all claims against the City Attorney.

## ARGUMENT

**I.    Plaintiffs Have Not Established Standing to Bring Pre-Enforcement Claims.**

Standing to bring a pre-enforcement challenge requires "an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute," and "a credible threat of prosecution thereunder." *Babbitt v. United Farm Workers*, 442 U.S. 289, 298 (1979). Neither requirement is met here.

### A. By Plaintiffs' Own Admission, the Washington Injunction Has Rendered Any Potential Future Injury Far Too Speculative.

Plaintiffs argue at length that they are not named in the Washington Injunction and thus "could publish the *Defense Distributed I* today without violating that injunction" (Resp. at 3). Regardless of whether they *could* publish the Files, however, Plaintiffs do not allege that, since entry of the Washington Injunction, they *have* continued to publish the Files in violation of the ITAR regulations, nor do they allege any intent to do so while the Washington Injunction remains in place. *See* FAC ¶ 62. To the contrary, Plaintiffs have expressly stated in records filed with this Court that "Defense Distributed removed the [CAD Files] from its website after a [TRO] was issued in [the Washington Action]," and "Defense Distributed will maintain that state of affairs until the [Washington Injunction] is dissolved or Defense Distributed is otherwise relieved of effect by a court of competent jurisdiction." Dkt. 52-4 (Pls.' First TRO, Ex. D) at 3; *see* Dkt. 69 (Order Denying Second TRO) at 6.[1] By their own admission, Plaintiffs have no intention of engaging in the conduct at issue, *i.e.*, publishing the CAD Files – certainly not

---

[1] The Court may find lack of jurisdiction based on "the complaint supplemented by undisputed facts evidenced in the record." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001).

imminently and, given the Washington Court's indication that a permanent injunction will likely issue, probably not ever. *See Washington v. U.S. Dep't of State*, 318 F. Supp. 3d 1247, 1257 (W.D. Wash. 2018) (finding likelihood of success on the merits). Any possibility of an enforcement action by Defendant Feuer, therefore, is at this time purely "conjectural or hypothetical." *Miss. State Dem. Party v. Barbour*, 529 F.3d 538, 545 (5th Cir. 2008).

### B. Plaintiffs Have Not Plausibly Alleged Any Injury Traceable to Defendant Feuer or Redressable by This Court.

Ignoring their own admissions that they continued publishing the CAD Files even after the City Attorney's actions and ceased publication only in response to the Washington Injunction (FAC ¶¶ 53, 61-62, 110, 114-15; *see* Dkt. 52-4 at 3), Plaintiffs try to manufacture injury by implausibly asserting that "irrespective of whether Feuer's conduct played a role in their initial decision to take down the files at issue, Plaintiffs have alleged it is causing them injury *today*." Resp. at 8 (citing FAC ¶¶ 116-19) (emphasis in original).

The Court need not accept as true allegations contradicted or rendered implausible by facts pleaded elsewhere in the complaint or subject to judicial notice. *See* 5C Charles Alan Wright, Fed. Practice & Proc. § 1363 (3d ed. 2018). But even if accepted as true, Plaintiffs' allegation does not alter the fact that Plaintiffs are currently barred under the existing ITAR regulations from publishing the CAD Files online. *See Washington*, 318 F. Supp. 3d at 1264; *cf. Def. Distributed v. U.S. Dep't of State*, 121 F. Supp. 3d 680, 690-701 (W.D. Tex. 2015) (rejecting Plaintiffs' challenges to ITAR regulations), *aff'd*, 838 F.3d 451 (5th Cir. 2016). Because federal law prohibits Plaintiffs from publishing their Files online, and no action by Defendant Feuer – or this Court – will alter this, Plaintiffs cannot satisfy the Article III requirements of traceability or redressability. *See, e.g.*, *White v. United States*, 601 F.3d 545, 552 (6th Cir. 2010) (where all states banned conduct at issue, alleged injuries not solely traceable

3

to federal restrictions and thus not redressable by enjoining federal statute); *San Diego Cty. Gun Rights Cmte. v. Reno*, 98 F.3d 1121, 1130 (9th Cir. 1996) (injuries not traceable to federal gun control legislation where state law banned similar conduct); *Penthouse Int'l, Ltd. v. Meese*, 939 F.2d 1011, 1019-20 (D.C. Cir. 1991) (where requested relief unlikely to cure injury, "doctrine of prudential mootness" counsels "refrain[ing] from exercising [the court's] equitable powers").[2]

### C. The City Attorney's Letter to the Court and Press Release Do Not Create an Objective Threat of Prosecution.

Even in the unlikely event the Washington Injunction is suddenly lifted, and even if the Court lends credence to Plaintiffs' implausible allegation that they are self-censoring partially in response to the City Attorney's actions, Plaintiffs *still* would lack constitutional standing because their "'[a]llegations of a subjective 'chill' are not an adequate substitute for a claim of specific present objective harm or a threat of specific future harm.'" *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 418 (2013) (quoting *Laird v. Tatum*, 408 U.S. 1, 13-14 (1972)).

Plaintiffs have not shown an objective threat of imminent prosecution by the City Attorney. Even if it were proper to scour the contents of Defendant Feuer's constitutionally protected petitions to the Federal Government for "evidence" of "veiled threats" obliquely aimed at Plaintiffs (a proposition for which they offer no authority), no such evidence can be found.

First, the undisputed purpose of the Letter is to "apprise the Court" of the City's "inten[t] to move to intervene" in *Defense Distributed I*. Dkt. 23-10. Plaintiffs argue this intent to intervene is itself the "explicit threat" against Plaintiffs. Resp. at 2, 6-7. But intervening in a

---

[2] Unlike in *Hollis v. Lynch*, 827 F.3d 436, 442 (5th Cir. 2016), where the federal and state laws were substantially similar and thus their "fates … intertwined," here, the validity of the ITAR regulations and the City Attorney's challenged conduct involve separate and distinct inquiries.

federal action (initiated by Plaintiffs themselves) to defend the validity of existing federal arms-export regulations is a far cry from bringing a prosecutorial enforcement action against Plaintiffs.

Second, the City Attorney's discussion of specific statutory provisions and his responsibility "to enforce the gun laws of the City and California" was included to demonstrate the City's "concrete, particularized, and legally protectable interest in the Litigation," as required for intervention. Dkt. 23-10; *see* Fed. R. Civ. P. 24(a)(2). Read in the context of a proposed intervention motion, and unaccompanied by a threat to enforce said laws against Plaintiffs, such general statements are insufficient to establish an objective "threat of specific future harm." *Clapper*, 568 U.S. at 418; *see, e.g.*, *Rincon Band of Mission Indians v. Cty. of San Diego*, 495 F.2d 1, 4 (9th Cir. 1974) (sheriff's statement to tribal members that ordinance would be enforced within his jurisdiction insufficient to establish standing).

Third, the statement in the Press Release that 3D gun blueprints "should not be published under any circumstances" is hortatory and expressly directed at the State Department, not Plaintiffs. Dkt. 23-11. The Press Release does not "'command[] Defense Distributed to cease publishing the [CAD] Files" (Resp. at 2 (quoting FAC ¶ 115)), but rather "urge[s] the U.S. State Department" not to grant Defense Distributed "a special exemption to [rules barring the posting of gun blueprints online]." Dkt. 23-11; *see* Fed. Practice & Proc. § 1363, *supra*.

Nothing suggests the City Attorney's Letter and Press Release were anything but legitimate efforts to persuade this Court and the State Department not to modify existing ITAR regulations to allow the online distribution of 3D gun blueprints. The non-threatening nature of the City Attorney's federal petitions is further corroborated by the fact that Defense Distributed continued publishing the files even after the Letter and Press Release were issued (FAC ¶¶ 53, 110, 114-15); and, despite the purported proliferation of these files on the Internet by others, the

City Attorney has not brought charges against Plaintiffs or anyone else for such conduct (*see id.* ¶¶ 54-55). *See Hammerhead Enters. v. Brezenoff*, 707 F.2d 33, 34-40 & n.2 (2d Cir. 1983) (public official's letters to stores urging them not to carry plaintiff's product not coercive where letter "refer[red] to no adverse consequences that might be suffered" from disregarding the letter, and "not a single store was influenced by [the letters]"); *Penthouse*, 939 F.2d at 1013-16, 1019.

Plaintiffs cannot overcome these specific, objective facts with a conclusory assertion that Defendant Feuer "is 'actively engaged in an ongoing *coercive* campaign ….[']" Resp. at 1 (quoting FAC ¶ 109) (emphasis added in Resp.). Plaintiffs' characterization of the Letter and Press Release as "coercive" does not make them so. *See Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (court "'not bound to accept as true a legal conclusion couched as a factual allegation'"). Though Plaintiffs "invoke the spectre of government censorship," the record "shows this claim to be little more than a figment of [their] … imagination." *Hammerhead Enters.*, 707 F.2d at 39.

### D. Without An Imminent Threat of Prosecution, Plaintiffs' As-Applied Challenges Are Unripe.

Finally, in protesting that "a defendant need not *expressly* threaten a plaintiff for standing to exist" (Resp. at 7), "'plaintiffs … confuse an attack on the constitutionality of a statute on its face with an attack on the statute as applied.'" *Ctr. for Individual Freedom v. Carmouche*, 449 F.3d 655, 659 (5th Cir. 2006). All of the cases on which Plaintiffs rely involved facial challenges to statutes that, on their face, proscribed the conduct at issue.[3] In contrast, Plaintiffs

---

[3] *See Susan B. Anthony List v. Driehaus*, 134 S. Ct. 2334, 2338, 2340 (2014) (facial challenge to statute criminalizing making of certain false statements during political campaigns); *Virginia v. Am. Booksellers Ass'n, Inc.*, 484 U.S. 383, 388, 392 (1988) (facial challenge to statute

6

here do not mount a facial challenge to any statute. *See* Resp. at 5 n.2 (challenging the statutes identified in the City Attorney's Letter only "as applied to Plaintiffs' conduct"). Indeed, Plaintiffs identify not a single statute that, on its face, proscribes the conduct at issue. There is thus no basis for deviating from the rule that "a party cannot challenge a statute as-applied unless the statute has been applied to him…." *Ctr. for Individual Freedom*, 449 F.3d at 659; *see Orix Credit Alliance, Inc. v. Wolfe*, 212 F.3d 891, 895 (5th Cir. 2000) ("case is not ripe if further factual development is required"). Plaintiffs seek sweeping declaratory and injunctive relief barring the City Attorney from *ever* bringing *any* enforcement action against them. Divorced from any specific factual context, their claims are patently unripe. *See Orix*, 212 F.3d at 894-98 (action seeking to bar filing of "threatened draft motion" and "all future [related] actions" not ripe, as "[t]he content of the broad class of potential claims that [plaintiff] seeks to bar, and the certainty that any of these claims will ever be filed, are wholly unknown").

## II.  There Is No Basis for Personal Jurisdiction or Venue.

Plaintiffs concede that the Letter to the Court was an exercise of the City Attorney's First Amendment right to petition the government. *See* Resp. at 13-14. For that reason, Plaintiffs deny seeking to hold the City Attorney liable for the Letter to the Court and instead assert that their case is premised on purported "conduct that *is about to take place*" – *i.e.*, alleged

---

criminalizing display of certain publications to juveniles); *Babbitt*, 442 U.S. at 293-297 (facial challenge to labor statute criminalizing making of false statements during consumer publicity campaigns); *Doe v. Bolton*, 410 U.S. 179, 181, 188 (1973) (facial challenge to criminal abortion statutes); *Justice v. Hosemann*, 771 F.3d 285, 288-92 (5th Cir. 2014) (facial challenge to campaign finance disclosure law); *Ctr. for Individual Freedom*, 449 F.3d at 659 (facial challenge to campaign finance law); *Int'l Soc'y for Krishna Consciousness of Atlanta v. Eaves*, 601 F.2d 809, 821-23 (5th Cir. 1979) (facial challenge to solicitation ordinance); *Wis. Right to Life, Inc. v. Schober*, 366 F.3d 485, 487-89 (7th Cir. 2004) (facial challenge to campaign finance law); *Backpage.com, LLC v. Cooper*, 939 F. Supp. 2d 805, 813 (M.D. Tenn. 2013) (facial challenge to statute criminalizing sale of certain advertisements); *Deida v. City of Milwaukee*, 192 F. Supp. 2d 899, 904-08 (E.D. Wis. 2002) (facial challenge to ordinance prohibiting leafleting on cars).

enforcement of California state and local laws *in* California. *Id.* at 14. Yet Plaintiffs' concession makes it impossible to distinguish *Stroman Realty, Inc. v. Wercinski*, 513 F.3d 476 (5th Cir. 2008). Indeed, if the Letter to the Court is removed from the equation, neither the FAC nor the Response reveal any contacts between the City Attorney and Texas at all. Thus, under *Stroman Realty*, even if the City Attorney had threatened enforcement of California laws, exercising jurisdiction over him in Texas "would violate due process." *Stroman Realty*, 513 F.3d at 489.

While denying they base their claims against the City Attorney on the Letter to the Court, Plaintiffs nonetheless argue the Letter establishes personal jurisdiction. Plaintiffs argue that when a non-party moves to intervene in a case, that non-party submits to the Court's jurisdiction. Resp. at 9. Putting aside the fact that the City Attorney never actually filed a motion to intervene in *Defense Distributed I*, Plaintiffs' cases simply do not support personal jurisdiction here.

Indeed, most of Plaintiffs' cases stand for the unremarkable proposition that once a non-party voluntarily appears before a court and requests relief, that court will have jurisdiction over the non-party *in that case*. *See, e.g.*, *Trans World Airlines, Inc. v. Mattox*, 897 F.2d 773 (5th Cir. 1990).[4] Yet, here, Plaintiffs do not seek to establish jurisdiction over the City Attorney in the *Defense Distributed I* case; they seek to establish jurisdiction in an entirely separate matter.

Plaintiffs argue that a voluntary appearance in one case will also support jurisdiction in a related matter. Resp. at 11 n.3. But to establish jurisdiction, the second lawsuit must address "the same transaction or aris[e] out of the same nucleus of operative facts" as the original suit.

---

[4] It is not clear the Letter would have sufficed to establish jurisdiction over the City Attorney even in *Defense Distributed I*. The City Attorney's Letter did not ask for any relief; it simply urged the Court to grant others' motions to intervene. Supporting a procedural motion filed by another has been held insufficient to establish personal jurisdiction. *See Tracinda Corp. v. DaimlerChrysler AG*, 197 F. Supp. 2d 86, 92 (D. Del. 2002) (letter to court supporting consolidation motion by other defendants insufficient to waive personal jurisdiction defense).

*Gen. Contracting & Trading Co. v. Interpole, Inc.*, 940 F.2d 20, 23 (1st Cir. 1991). And the cases narrowly interpret the required scope of the "nucleus of operative facts."

For example, in *Kennedy Ship & Repair, L.P. v. Loc Tran*, 256 F. Supp. 2d 678, 684 (S.D. Tex. 2003), the earlier lawsuit itself was the basis for the misconduct claims in the second case. In *Int'l Transactions, Ltd. v. Embotelladora Agral Regionmontana SA de CV*, 277 F. Supp. 2d 654, 667 (N.D. Tex. 2002), the court held that two previous lawsuits filed by the defendant – to change the arbitrator and to add parties to the arbitration, respectively – provided personal jurisdiction over the defendant when enforcing that same arbitration award.

Here, this case does not concern the same transaction or arise out of the same nucleus of facts as *Defense Distributed I*. *Defense Distributed I* concerned application of the ITAR regulations and the "national security and foreign policy interests" they were designed to protect. *Washington*, 318 F. Supp. 3d at 1252. In contrast, this action pertains to Plaintiffs' unsupported allegation that the City Attorney threatened to enforce California laws against them.[5]

### III. *Noerr-Pennington* Requires Dismissal of All Claims Against the City Attorney.

Plaintiffs' concession that the Letter and Press Release are petitions to the Federal Government also renders the City Attorney immune from liability under *Noerr-Pennington*. Mot. at 15-17. Plaintiffs imply their First Amendment claim should survive because the City Attorney's speech crossed the line "'between government expression and intimidation.'" Resp. at 1 (quoting *Backpage.com*, 807 F.3d at 230). But *Noerr-Pennington* already accommodates the need for careful balancing between lawful petitioning and unlawful coercion. Under the narrow "sham" exception, "objectively baseless" petitioning can give rise to liability where the petitioning process is used merely to harass the plaintiff. *See Bryant v. Military Dep't*, 597 F.3d

---

[5] For the very same reasons, venue is improper under 28 U.S.C. § 1391(b)(2) and (b)(3).

9

678, 690-94 (5th Cir. 2010). Nothing here suggests the City Attorney's petitions were merely a "sham" for directing veiled threats at Plaintiffs. Indeed, that a court ultimately granted the relief the City Attorney advocated for in his petitions (*see Washington*, 318 F. Supp. 3d at 1264) defeats any suggestion they were a sham. *See Prof'l Real Estate Investors, Inc. v. Columbia Pictures Indus.*, 508 U.S. 49, 60 n.5 (1993) ("A winning lawsuit is by definition … not a sham."); *Allied Tube & Conduit Corp. v. Indian Head, Inc.*, 486 U.S. 492, 502 (1988).

### IV.   The TCPA Requires Dismissal of Count Seven and Attorneys' Fees.

Plaintiffs concede that *if* the TCPA applies, the City Attorney is entitled to dismissal of Count Seven and attorneys' fees. *See* Resp. at 15. Whether the TCPA applies in federal court is an issue currently pending in the Fifth Circuit, which has not previously directly considered it. *See Rudkin v. Roger Beasley Imports, Inc.*, 5th Cir. No. 18-50157 (docketed Mar. 2, 2018). While recognizing this Court has previously ruled on this issue "in the context of counterclaims," *N.P.U., Inc. v. Wilson Audio Specialties*, No. 1:18-cv-167-RP, 2018 U.S. Dist. LEXIS 184584, at *10 (W.D. Tex. Oct. 29, 2018), the City Attorney respectfully preserves his TCPA motion, should the Fifth Circuit adopt the reasoning of the First, Second, Fifth, and Ninth Circuits, all of which have permitted early dismissal under other states' similar anti-SLAPP statutes.[6]

### CONCLUSION

For all the foregoing reasons and those stated in the City Attorney's opening brief, all claims against the City Attorney should be dismissed.

---

[6] *See U.S. ex rel. Newsham v. Lockheed Missiles & Space Co.*, 190 F.3d 963, 972-73 (9th Cir. 1999) (California's anti-SLAPP statute applies in federal court); *Makaeff v. Trump Univ., LLC*, 736 F.3d 1180, 1181-84 (9th Cir. 2013) (same); *Godin v. Schencks*, 629 F.3d 79, 85-92 (1st Cir. 2010) (same for Maine's anti-SLAPP); *Adelson v. Harris*, 774 F.3d 803, 809 (2d Cir. 2014) (same for Nevada's anti-SLAPP); *Henry v. Lake Charles Am. Press, LLC*, 566 F.3d 164, 169 (5th Cir. 2009) (same for Louisiana's anti-SLAPP).

Dated: December 14, 2018                                  Respectfully Submitted,

*James P. Clark*                                          *Michael M. Walsh*
California Bar No. 64780                                  California Bar No. 150865
Chief Deputy City Attorney                                Deputy City Attorney
City of Los Angeles                                       City of Los Angeles
200 North Main Street, 8th Floor                          200 North Main Street, 8th Floor
Los Angeles, CA  90012                                    Los Angeles, CA  90012
Tel: (213) 978-8100                                       Tel: (213) 978-2209 / Fax: (213) 978-0763
james.p.clark@lacity.org                                  michael.walsh@lacity.org

*Connie K. Chan*                                          *Jason P. Steed*
California Bar No. 284230                                 Texas State Bar No. 24070671
Deputy City Attorney                                      KILPATRICK TOWNSEND &
City of Los Angeles                                       STOCKTON LLP
200 North Spring Street, 14th Floor                       2001 Ross Avenue, Suite 4400
Los Angeles, CA  90012                                    Dallas, TX 75201
Tel: (213) 978-1864                                       Tel: (214) 922-7112; Fax: (214) 853-5731
connie.chan@lacity.org                                    jsteed@kilpatricktownsend.com

*COUNSEL OF RECORD*

## CERTIFICATE OF SERVICE

      I hereby certify that on December 14, 2018, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

                                              */s/ Connie K. Chan*
                                              Connie K. Chan