IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| DEFENSE DISTRIBUTED and SECOND AMENDMENT FOUNDATION, INC., | § § § | |
| Plaintiffs, | § § | |
| v. | § § | 1:18-CV-637-RP |
| GURBIR S. GREWAL, in his official capacity as New Jersey Attorney General, MICHAEL FEUER, in his official capacity as Los Angeles City Attorney, ANDREW CUOMO, in his official capacity as New York Governor, MATTHEW DENN, in his official capacity as Attorney General of the State of Delaware, JOSH SHAPIRO, in his official capacity as Attorney General of Pennsylvania, *and* THOMAS WOLF, in his official capacity as Pennsylvania Governor, | § § § § § § § § § § § § § § § | |
| Defendants. | § § | |

## ORDER

Before the Court are Defendant Feuer's Motion to Dismiss, (Feuer Mot., Dkt. 50), Defendant Cuomo's Motion to Dismiss, (Cuomo Mot., Dkt. 55), Defendants Grewal and Denn's Motion to Dismiss, (Grewal & Denn Mot., Dkt. 57), Defendants Wolf and Shapiro's Motion to Dismiss, (Wolf & Shapiro Mot., Dkt. 75), Plaintiffs' responses to each motion, (Dkts. 59, 73, 86),[1] and Defendants' respective replies, (Dkts. 76, 79, 82, 90). Having considered the parties' briefs, the record, and relevant law, the Court finds that it lacks personal jurisdiction over each Defendant. Accordingly, the Court will grant the Defendants' motions to dismiss.

---

[1] Plaintiffs filed a combined response to the motions to dismiss filed by Defendant Cuomo and Defendants Grewal and Denn. (*See* Dkt. 73).

# I. BACKGROUND

Plaintiff Defense Distributed is a Texas corporation whose mission is to "defend[ ] the American civil liberty of popular access to arms," a mission it furthers by "publishing information regarding the production of arms to the general public." (Am. Compl., Dkt. 23 ¶ 10). Part of what Defense Distributed has published includes "computer-aided design (CAD) data files that can be used to manufacture a virtually undetectable, untraceable gun with a 3D printer." (Feuer Mot., Dkt. 50, at 3). Defense Distributed's primary method of distributing these files is by hosting them on its website, DEFCAD, for visitors to download. (Am. Compl., Dkt. 23 ¶ 11; Heindorff Decl., Dkt. 65-26 ¶ 8). Plaintiff Second Amendment Foundation, Inc. ("Second Amendment Foundation") is a non-profit organization whose members seek to obtain the information published by Defense Distributed. (Am. Compl., Dkt. 23 ¶¶ 12–13).

Defense Distributed began publishing CAD files related to the 3D printing of firearms in December 2012. (Wilson Decl., Dkt. 65-23 ¶ 3; Heindorff Decl., Dkt. 65-26 ¶ 8).  In May 2013, the Directorate of Defense Trade Controls ("DDTC"), part of the U.S. State Department, sent a letter to Defense Distributed instructing them to remove certain CAD files from the DEFCAD website. (*See* State Dept. Letter, Heindorff Decl., Dkt. 65-26, at 19–21). The letter stated that Defense Distributed was required to seek prior authorization before publishing these files because they may have contained information subject to the Arms Export Control Act ("AECA") and the AECA's implementing regulations, the International Traffic in Arms Regulations ("ITAR"). (*See id.* at 19). Defense Distributed complied with the DDTC's instructions and sought authorization to publish the specified CAD files. (Req. Jud. Not., Dkt. 77, at 7). The DDTC failed to timely rule on Defense Distributed's request, and the matter of *Defense Distributed, et al., v. U.S. Dept. of State, et al.*, 1:15-CV-372-RP (W.D. Tex) (*Defense Distributed I*) followed. In that case, Plaintiffs challenged the ITAR

provisions regulating the publication of the CAD files (hereafter, the "*Defense Distributed I* files") on the Internet. (*Id*.).

Ultimately, the parties settled. The parties' Settlement Agreement provided that the State Department would issue a license permitting the plaintiffs to publish the *Defense Distributed I* files on the Internet. (*See* Settlement Agreement, Heindorff Decl., Dkt. 65-26, at 23–25). This license issued on July 27, 2018. (*Id.* ¶ 18). Three days later, this Court dismissed the *Defense Distributed I* action pursuant to the parties' stipulated dismissal with prejudice. (*See* Req. Jud. Not., Dkt. 77, at 40). That same day, however, nine Attorneys General from eight States and the District of Columbia filed suit in the United States District Court for the Western District of Washington to enjoin the State Department from performing the terms of the Settlement Agreement (the "Washington Action").[2] (Am. Compl., Dkt. 23 ¶¶ 59–60). The Washington Court issued a temporary restraining order on July 31, and a nationwide preliminary injunction on August 27, enjoining the State Department from modifying the ITAR regulations to allow Defense Distributed to publish the *Defense Distributed I* files. (*Id.* ¶¶ 62–63). The preliminary injunction remains in effect, the Washington Action is currently pending, and Defense Distributed has ceased publishing CAD files on the Internet.

The instant action concerns several civil and criminal enforcement actions taken by the Defendant state officials in the wake of the *Defense Distributed I* Settlement Agreement. These actions include:

(1) sending cease-and-desist letters threatening legal action if Defense Distributed does not cease publishing the *Defense Distributed I* files;

(2) sending letters to third-party companies that provide internet security services to Defense Distributed;

---

[2] The Washington Action is currently docketed as *State of Washington, et al., v. United States Dept. of State, et al.*, No. 2:18-CV-1115-RSL (W.D. Wash.).

      (3)   initiating civil lawsuits against Defense Distributed;

      (4)   threatening to enforce a criminal law against Defense Distributed;

      (5)   issuing press releases regarding commitments and efforts to prevent Defense Distributed from publishing the *Defense Distributed I* files;

      (6)   placing a telephone call with Defense Distributed to demand that Defense Distributed stop publishing the *Defense Distributed I* files; and

      (7)   filing a letter with this Court in support of a motion to intervene in *Defense Distributed I.*

(*See id.* ¶¶ 75–115; Mot. Prelim. Inj., Dkt. 67, at 30).

Plaintiffs allege that these actions are part of a "coordinated and politically-fueled campaign to censor Defense Distributed." (Am. Compl., Dkt. 23 ¶ 5). As explained below, the Court finds that none of the above actions establish minimum contacts between any of the Defendants and Texas.

## II. LEGAL STANDARD AND DISCUSSION

Each Defendant to this action challenges this Court's exercise of personal jurisdiction over him. "Requiring a court to have personal jurisdiction over a party [is] a matter of constitutional due process" designed to "protect[ ] an individual's liberty interest in not being subject to the binding judgment of a forum with which he has established no meaningful contacts, ties, or relations." *First Inv. Corp. v. Fujian Mawei Shipbuilding, Ltd.*, 703 F.3d 742, 749 (5th Cir. 2012) (citation and quotation marks omitted). Under Federal Rule of Civil Procedure 12(b)(2), the party invoking the power of the court (here, Plaintiffs) bears the burden of making a *prima facie* showing that personal jurisdiction is proper. *Monkton Ins. Servs. v. Ritter*, 768 F.3d 429, 431 (5th Cir. 2014). To make this showing, "the

plaintiff must show that the nonresident defendant purposefully availed itself of the benefits and protections of the forum state by establishing 'minimum contacts' with the forum state." *Id.* (citation omitted) (cleaned up). "Sufficient minimum contacts will give rise to either specific or general jurisdiction." *Id.* (citation omitted). All Defendants argue, and Plaintiffs do not dispute, that this Court does not have general jurisdiction over them.[3] Accordingly, Plaintiffs must show that the exercise of specific jurisdiction over each Defendant is proper.

With respect to specific jurisdiction, the Fifth Circuit applies a three-step analysis: "(1) whether the defendant has minimum contacts with the forum state, *i.e.*, whether it purposely directed its activities toward the forum state or purposefully availed itself of the privileges of conducting activities there; (2) whether the plaintiff's cause of action arises out of or results from the defendant's forum-related contacts; and (3) whether the exercise of personal jurisdiction is fair and reasonable." *Monkton*, 768 F.3d at 433 (citation omitted). Specific jurisdiction "focuses on the relationship among the defendant, the forum, and the litigation." *Monkton*, 768 F.3d at 432–33 (5th Cir. 2014) (quoting *Walden v. Fiore*, 134 S. Ct. 1115, 1121 (2014)). Plaintiffs bear the burden of establishing the first two prongs; only if they are successful in doing so does the burden shift to the Defendants to establish the third prong. *Id.*

### A. Threshold Issues

Plaintiffs raise two threshold issues pertinent to the Court's minimum contacts analysis. The Court addresses each in turn before turning to the merits of the parties' personal jurisdiction dispute.

### 1. Judicial Estoppel

Plaintiffs argue that Defendants Cuomo, Grewal, Denn, Wolf, and Shapiro are judicially estopped from challenging personal jurisdiction in Texas because of the position they took in the

---

[3] (*See* Feuer Mot., Dkt. 50, at 11; Pls. Resp. Feuer Mot., Dkt. 59, at 10; Cuomo Mot., Dkt. 55, at 15; Grewal & Denn Mot., Dkt. 57; at 11; Pls. Resp. Cuomo, Grewal & Denn Mots., Dkt. 73, at 10; Wolf & Shapiro Mot., Dkt. 75, at 18; Pls. Resp. Wolf & Shapiro Mot., Dkt. 86, at 5).

Washington Action. The judicial estoppel doctrine "prevents a party from asserting a claim in a legal proceeding that is inconsistent with a claim taken by that party in a previous proceeding." *New Hampshire v. Maine*, 532 U.S. 742, 742–43 (2001). Plaintiffs assert that these Defendants argued in the Washington Action that (1) "there is nothing wrong with litigating this kind of controversy away from" the Defendants' respective states of citizenship, and (2) that "'minimum contacts' exist as to Defense Distributed in Washington." (Pls. Resp. Cuomo, Grewal & Denn Mot., Dkt. 73, at 9; Pls. Resp. Wolf & Shapiro Mot., Dkt. 86, at 3). But here, Defendants Cuomo, Grewal, and Denn argue that minimum contacts "for this controversy" exist only in New York, New Jersey, and Delaware; and Defendants Wolf and Shapiro argue that minimum contacts exist only in Pennsylvania. (*Id.*). Plaintiffs claim that these positions are contradictory to the Defendants' positions in the Washington Action.

Plaintiffs, however, incorrectly focus on "this controversy" rather than on the *defendants* to the controversy. It is foundational that the minimum contacts inquiry focuses not on "the kind of controversy" before the court, but on the defendant's contacts with the forum state. *See Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945); *Walden v. Fiore*, 571 U.S. 277, 284 (2014). The Defendants' argument, in a different case, that Defense Distributed had minimum contacts with Washington, is in no way inconsistent with their argument here that they themselves have no minimum contacts with Texas. Because these positions are not contradictory, Plaintiffs have failed to make a colorable claim for judicial estoppel.

## 2. Nationwide Contacts

Plaintiffs raise a second threshold matter—that the Court's minimum contacts analysis must look to Defendants' contacts with the nation as a whole, not just Texas. (Pls. Resp. Cuomo, Grewal & Denn Mot., Dkt, 73, at 11 n.6; Pls. Resp. Wolf & Shapiro Mot., Dkt. 86, at 9–11). Plaintiffs point to the Supreme Court's observation in *Bristol-Myers Squibb Co. v. Superior Court of California, San*

*Francisco County* that "constitutional 'restrictions on the exercise of personal jurisdiction by a federal court' are not the same as 'the due process limits on the exercise of personal jurisdiction by a State.'" (Pls. Resp. Wolf & Shapiro Mot., Dkt. 86, at 10) (emphasis removed) (quoting *Bristol-Myers Squibb*, 137 S. Ct. 1773, 1783–84 (2017)). As applied to this case, Plaintiffs argue that "[m]ost or all of the defendants' motions implicate this issue by directly invoking federal due process guarantees," and, "[t]o the extent that this is the case, they should fail because 'minimum contacts' with the Nation as a whole suffice to meet the Fifth Amendment's Due Process Clause concerns." (Pls. Resp. Cuomo, Grewal & Denn Mot., Dkt, 73, at 11 n.6; *see also* Pls. Resp. Wolf & Shapiro Mot., Dkt. 86, at 10–11).

Plaintiffs have not shown that the national minimum contacts rule applies in this case. That rule applies only when a federal statute or rule supplies the basis for personal jurisdiction, which Plaintiffs do not allege here. *Bellaire Gen. Hosp. v. Blue Cross Blue Shield*, 97 F.3d 822, 825 (5th Cir. 1996). Even Plaintiffs' cited cases acknowledge this limitation. *See Bristol-Myers Squibb*, 137 S. Ct. at 1784 (citing *Omni Capital Int'l, Ltd. v. Rudolf Wolff & Co.*, 484 U.S. 97, 102, n.5 (1987)); *Lone Star Package Car Co. v. Baltimore & O. R. Co.*, 212 F.2d 147, 153–54 (5th Cir. 1954) (in a case where a federal court's jurisdiction is based on the assertion of a federal right, "Congress can provide for service of process anywhere in the United States")[4]; *United Rope Distribs., Inc. v. Seatriumph Marine Corp.*, 930 F.2d 532, 535 (7th Cir. 1991) ("[P]ersonal jurisdiction may be created only by statute or federal rule with the force of statute.") (citing *Omni*, 383 U.S. at 108).

---

[4] Moreover, the Fifth Circuit has stated that because "service of process and personal jurisdiction are conceptually related concepts," "when a federal court attempts to exercise jurisdiction over a defendant in a suit based upon a federal statute providing for nationwide service of process, the relevant inquiry is whether the defendant has had minimum contacts with the United States." *Bellaire*, 97 F.3d at 825 (internal quotation marks and citation omitted); *accord Walden*, 571 F.3d at 283 ("Federal courts ordinarily follow state law in determining the bounds of their jurisdiction over persons . . . because a federal district court's authority to assert personal jurisdiction in most cases is linked to service of process on a defendant who is subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located.") (citations and quotation marks omitted).

Moreover, even if Plaintiffs' nationwide jurisdiction rule were applicable here, Plaintiffs have failed to establish that Defendants have minimum contacts with the nation as a whole. Indeed, Plaintiffs make no attempt to show that Defendants have national minimum contacts; rather, Plaintiffs merely assert that by virtue of the open question identified in *Bristol-Myers Squibb*, and the fact that "[m]ost or all of the defendants' motions seem to implicate this issue by directly invoking federal due process guarantees," national contacts suffice to establish personal jurisdiction. (Pls. Resp. Cuomo, Grewal & Denn Mot., Dkt. 73, at 11 n.6; *see also* Pls. Resp. Wolf & Shapiro Mot., Dkt. 86, at 10–11). This result does not follow.

### B. Minimum Contacts

Turning to the merits of the personal jurisdiction dispute, it is Plaintiffs' burden to establish that Defendants have minimum contacts with Texas. *Monkton*, 768 F.3d at 431. Plaintiffs must do so for each Defendant. *See Logan Int'l v. 1556311 Alta. Ltd.*, 929 F. Supp. 2d 625, 631 (S.D. Tex. 2012) ("Each defendant's contacts with the forum must be analyzed individually.").

### 1. "Effects-based" Jurisdiction

Plaintiffs challenge several actions taken by the Defendants, including sending cease-and-desist letters to Defense Distributed, issuing press releases about Defense Distributed, and bringing civil lawsuits against Defense Distributed. (*See* Am. Compl., Dkt. 23 ¶¶ 67–71). Of these, Plaintiffs assert that "[c]ease-and-desist letters deployed to Defense Distributed in Texas are the keystone conduct that subjects each defendant to specific jurisdiction in Texas." (Pls. Resp. Cuomo, Grewal & Denn Mot., Dkt. 73, at 11). Specifically, Plaintiffs assert that the Defendants who sent these letters "purport[ed] to change Texas law," thus "literally becoming governing officials of Texas." (*Id.* at 11–12).

All Defendants rely on *Stroman Realty, Inc. v. Wercinski*, 513 F.3d 476 (5th Cir. 2008) to argue that the Court cannot exercise specific jurisdiction over them in this case. In *Stroman*, the Fifth

Circuit held that an Arizona Department of Real Estate Commissioner who sent cease-and-desist letters to a Texas-based real estate company did not have minimum contacts with Texas. 513 F.3d at 484. There, the Fifth Circuit recognized that "[c]ourts generally exercise specific jurisdiction over nonresident defendants that are engaged in commercial, profit-oriented enterprise," but found that "the Commissioner was not engaged in commercial transactions to obtain a commercial benefit by acting in a governmental capacity to enforce Arizona law." *Id.* at 485 (citing *Kulko v. Superior Court*, 436 U.S. 84, 96–97 (1978)). Rather than "purport[ing] to change Texas law," the Commissioner was simply trying "to uphold and enforce the laws of Arizona." *Id.* at 486.

*Stroman* is instructive in this case. Like the Arizona Commissioner, Defendants sent cease-and-desist letters to a Texas entity in an effort to uphold the laws of their respective states. Like the Commissioner's letters, the Defendants' letters do not constitute "doing business" in Texas, and Defendants have not accrued any benefit relating to Texas through use of the letters. *See id.* at 484–85. So, like the Arizona Commissioner, Defendants did not "purposefully avail [themselves] of the benefits of Texas law like someone actually 'doing business' in Texas." *Id.* at 484 (cleaned up) (quoting *Hanson*, 357 U.S. at 253). It follows that the Defendants "could not have reasonably anticipated being haled into federal court in Texas to defend [the enforcement of their respective state statutes]." *Id.* (quoting *World Wide Volkswagon Corp. v. Woodson*, 444 U.S. 286, 297 (1980)).

Plaintiffs attempt to diminish *Stroman* by suggesting that it is inconsistent with two Supreme Court decisions: *Calder v. Jones*, 465 U.S 783 (1984), and *Walden v. Fiore*, 517 U.S. 277 (2014). (Pls. Resp. Grewal & Denn Mot. Dismiss, Dkt. 73, at 12). In *Calder*, the Court held that the exercise of jurisdiction over the petitioners in that case was "proper in California based on the 'effects' of their Florida conduct in California." 465 U.S. at 789 (citation omitted). In *Walden*, the Court held that the exercise of jurisdiction over the petitioner was *not* proper because the "petitioner formed no jurisdictionally relevant contacts with Nevada" even though "he allegedly directed his conduct at

plaintiffs whom he knew had Nevada connections." 517 U.S. at 289. Plaintiffs claim that *Stroman* "disregards *Calder*" but that *Walden* "reaffirm[s]" it, (Pls. Resp. Grewal & Denn Mot. Dismiss, Dkt. 73, at 12), and that under the *Calder* "effects test," Defendants have sufficient minimum contacts with Texas, (Hearing, Mot. Prelim. Inj., Dkt. 97). The Court disagrees.

 "Effects jurisdiction . . . is rare." *Stroman*, 513 F.3d at 486 (cleaned up). It is "premised on the idea that an act done outside a state that has consequences or effects within the forum state can suffice as a basis for personal jurisdiction if the effects are seriously harmful and were intended or highly likely to follow from the nonresident defendant's conduct." *Id.* (citing *Moncrief Oil Int'l Inc. v. OAO Gazprom*, 481 F.3d 309, 314 (5th Cir. 2007)). "[T]he key to *Calder*," however, "is that the effects" of a nonresident defendant's conduct must be assessed "as part of the analysis of the defendant's relevant contacts with the forum." *Id.* Thus, the Fifth Circuit has regularly "declined to allow jurisdiction for even an intentional tort where the only jurisdictional basis is the alleged harm to a Texas *resident*." *Id.* (emphasis added) (citing *Moncrief*, 481 F.3d at 314); *see also Panda Brandywine Corp. v. Potomac Elec. Power Co.*, 253 F.3d 865, 870 (5th Cir. 2001). A defendant's conduct is insufficient to establish minimum contacts when it has no relation to the forum state "other than the fortuity that [plaintiffs] reside there." *Panda Brandywine*, 253 F.3d at 869.

Similarly, the Supreme Court in *Walden* emphasized: "*Calder* made clear that mere injury to a forum resident is not a sufficient connection to the forum." 571 U.S. at 290. What matters is "the defendant's contacts with the forum State *itself*, not the defendant's contacts with persons who reside there." *Id.* at 285 (emphasis added). Accordingly, "[t]he proper question is not *where* the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects him to the forum in a meaningful way." *Id.* (emphasis added).

Plaintiffs have shown no meaningful connection between the Defendants and Texas. Illustratively, Plaintiffs argue that Defendants Wolf and Shapiro's lawsuit against Defense

Distributed in Pennsylvania, seeking to enjoin the distribution of the *Defense Distributed I* files, "by definition entails Texas contacts because Texas is where Defense Distributed is headquartered and where it publishes its website." (Pls. Resp. Wolf & Shapiro Mot., Dkt. 86, at 7–8). Similarly, Plaintiffs argue that minimum contacts are established with Texas because "Texas is also where Defense Distributed publishes information about firearms at a brick-and-mortar public library in digital formats." (*Id.* at 8). In essence, Plaintiffs ask the Court to "allow[ ] a *plaintiff's* contacts with the defendant and forum to drive the jurisdictional analysis." *Walden*, 571 U.S. at 289 (emphasis added). This approach to the minimum contacts analysis is "impermissible." *Id.*; *see also Monkton*, 768 F.3d at 433. It would "completely vitiate the constitutional requirement of minimum contacts and purposeful availment" because a nonresident defendant would be subject to suit in Texas "simply because the plaintiff's complaint alleged injury in Texas to Texas residents." *Panda Brandywine*, 253 F.3d at 870. Defendants' allegedly harmful conduct, however, has no relation to Texas, was not expressly aimed at Texas, and does not avail itself of any Texas laws or benefits. The only relationship any of the Defendants' actions have with the State of Texas is the "mere fortuity" that Defense Distributed resides there. *Panda Brandywine*, 253 F.3d at 870.[5]

In sum, the Court finds that under *Stroman*, *Calder*, and *Walden*, Plaintiffs have failed to establish that any Defendant to this action has minimum contacts with the State of Texas.

---

[5] Plaintiffs' several attempts to distinguish *Stroman* do not circumvent this fundamental rule. Plaintiffs have variously asserted that *Stroman* is distinguishable because it did not involve: (1) a nationwide injunction; (2) concurrent state court lawsuits; (3) a brick-and-mortar library; (4) take-down letters sent to Internet security companies; (5) public statements and press releases; or (6) a letter communicating an intent to intervene in a related but distinct lawsuit in Texas. (*See* Pls. Resp. Feuer Mot., Dkt. 59, at 12; Pls. Resp. Cuomo, Grewal & Denn Mot., Dkt. 73, at 12–13; Pls. Resp. Wolf & Shapiro Mot., Dkt. 86, at 7–8). None of these distinctions entail actions, taken by Defendants, that have any jurisdictionally meaningful relation to Texas, that were expressly aimed at Texas, or that avail themselves of any Texas laws or benefits. The Supreme Court is clear: "The proper question is not where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects him to the forum in a meaningful way." *Walden*, 571 U.S. at 290.

2. Defendant Feuer's Letter to the Court in *Defense Distributed I*

Plaintiffs also argue that Defendant Feuer consented to the Court's personal jurisdiction over him through his letter that urged the Court to grant a motion to intervene by three gun control advocacy groups in *Defense Distributed I*. (Pls. Resp. Feuer Mot., Dkt. 59, at 10–11; Am. Compl., Dkt. 23 ¶¶ 110–11). In the letter, Feuer expressed an intent to intervene, though he did not request such relief from the Court. (Am. Compl., Dkt. 23 ¶ 113). Plaintiffs argue that through this letter, Defendant Feuer voluntarily appeared before and sought affirmative relief from this Court, and so the Court has personal jurisdiction over him in the instant case. (Pls. Resp. Feuer Mot., Dkt. 59, at 11). That Feuer submitted this letter in a different action does not matter, Plaintiffs argue, because *Defense Distributed I* and this case "arise from the same general set of facts." (*Id.* at 12 n.3).

The Court finds the letter insufficient to establish personal jurisdiction over Feuer. First, Feuer neither "voluntary appeared" before nor sought "affirmative relief" from the Court, for purposes of jurisdiction, in *Defense Distributed I. See Bayou Steel Corp. v. M/V Amstelvoorn*, 809 F.2d 1147, 1149 (5th Cir. 1987) ("[T]he filing of a counter-claim, cross-claim, *or third-party demand* does not operate as a waiver of an objection to jurisdiction.") (emphasis added); *Tracinda Corp. v. DaimlerChrysler AG*, 197 F. Supp. 2d 86, 92 (D. Del. 2002) (letter in support of consolidation motion by other parties not sufficient "to constitute a waiver of a timely filed and actively pursued defense of lack of personal jurisdiction").

Second, Feuer neither chose to commence *Defense Distributed I* nor the instant action, and he has not "purposefully availed" himself of Texas's benefits and protections by participating in either case. *See Painewebber Inc. v. Chase Manhattan Private Bank (Switz.)*, 260 F.3d 453, 460 (5th Cir. 2001) ("This is not a case in which the party seeking to avoid the court's jurisdiction has chosen to commence the action or a related action in the very forum in which it is contesting personal jurisdiction."); *Kennedy Ship & Repair, L.P. v. Loc Tran*, 256 F. Supp. 2d 678, 684 (S.D. Tex. 2003)

("unlike a case where a party merely files a cross-motion, a party purposefully avails itself of a state's benefits and protections when it is has previously 'chosen to commence the action or a related action in the very forum in which it is contesting personal jurisdiction'") (quoting *Painewebber*, 260 F.3d at 460); *Toshiba* 993 F. Supp. at 573 (no personal jurisdiction when a party did not bring a separate, original action, but rather a third-party action for indemnity).

Third, even if Defendant Feuer's letter constituted a voluntary appearance and affirmative request for relief in *Defense Distributed I*, that case is not sufficiently related to this one such that the letter provides the Court with a basis for exercising personal jurisdiction over Feuer here. *Defense Distributed I* involved the State Department's enforcement of ITAR and the national security and foreign policy interests furthered by those regulations, whereas here, Plaintiffs are attempting to stop the Defendant state officials from enforcing their respective states' laws in order to protect their states' interests.

Accordingly, the Court finds that Defendant Feuer's letter in *Defense Distributed I* is insufficient to support the Court's exercise of personal jurisdiction over him in this case.

*     *     *

In sum, Plaintiffs have failed to establish that any Defendant to this action has minimum contacts with the State of Texas. Because minimum contacts are a prerequisite to the exercise of jurisdiction, *Walden*, 571 U.S. at 288, the Court concludes that it does not have personal jurisdiction over any Defendant.

### C. Jurisdictional Discovery

Finally, Plaintiffs argue that if the Court finds it lacks personal jurisdiction over the Defendants, then jurisdictional discovery is warranted to assess the relationship between the Defendants and the three gun control advocacy groups discussed above. (Pls. Resp. Grewal & Denn Mot. Dismiss, Dkt. 73, at 14). Plaintiffs' theory is that "one or more of the defendants" directed

13

these groups to intervene in *Defense Distributed I*, and that the groups' contacts with Texas established in that case can be attributed to the defendants "for jurisdictional purposes" in this one. (*Id.*). Plaintiffs' theory is based on Defendant Grewal acknowledging "some kind of cooperation" with these groups in a public speech, and the fact that "representatives from each gun control group have . . . tout[ed] their relationship[s] with lawmakers." (*Id.* at 14 n.8).

"The district court . . . has broad discretion in all discovery matters." *Wyatt v. Kaplan*, 686 F.2d 276, 283 (5th Cir. 1982). In particular, the district court's discretion to permit jurisdictional discovery on a motion to dismiss for lack of personal jurisdiction "will not be disturbed ordinarily unless there are unusual circumstances showing a clear abuse." *Id.* Further, "[w]hen the lack of personal jurisdiction is clear, discovery would serve no purpose and should not be permitted." *Id.*

Here, Plaintiffs have failed to plead sufficient facts to base personal jurisdiction on any relationship between Defendants and the three gun control advocacy groups. Plaintiffs wish to base the Defendants' minimum contacts on actions taken by these third parties, who are not parties to this action, who may or may not have any relationship with an unspecified number of the Defendants, whose supposed relationship with the Defendants is not alleged anywhere in Plaintiffs' amended complaint, and which relationship would have arisen, if at all, out of events relating to a separate legal dispute—*Defense Distributed I*—to which Defendants were not parties. The Court finds that the lack of personal jurisdiction over Defendants is clear, and that any discovery on the matter would be futile in light of the Court's finding that this case and *Defense Distributed I* are not sufficiently related for purposes of exercising personal jurisdiction. Accordingly, the Court will not grant Plaintiffs' request for jurisdictional discovery.

## III. CONCLUSION

For the reasons stated above, **IT IS ORDERED** that Defendant Michael Feuer's Motion to Dismiss, (Dkt. 50), is **GRANTED**.

**IT IS FURTHER ORDERED** that Defendant Andrew M. Cuomo's Motion to Dismiss, (Dkt. 55), is **GRANTED**.

**IT IS FURTHER ORDERED** that Defendants Gurbir S. Grewal and Matthew Denn's Motion to Dismiss, (Dkt. 57), is **GRANTED**.

**IT IS FURTHER ORDERED** that Defendants Thomas Wolf and Josh Shapiro's Motion to Dismiss, (Dkt. 75), is **GRANTED**.

**IT IS FURTHER ORDERED** that because the Court finds it does not have personal jurisdiction over Defendant Grewal, Plaintiffs' Motion for Preliminary Injunction, (Dkt. 67), is **DENIED**.

**IT IS FINALLY ORDERED** that Plaintiffs' claims against all Defendants are **DISMISSED WITHOUT PREJUDICE**. Plaintiffs may pursue their claims in a court of proper jurisdiction.

**SIGNED** on January 30, 2019.

_____
ROBERT PITMAN
UNITED STATES DISTRICT JUDGE