

## *State of New Jersey*

PHILIP D. MURPHY
*Governor*

SHEILA Y. OLIVER
*Lt. Governor*

OFFICE OF THE ATTORNEY GENERAL
DEPARTMENT OF LAW AND PUBLIC SAFETY
DIVISION OF LAW
PO Box 45029
Newark, NJ 07101

MATTHEW J. PLATKIN
*Acting Attorney General*

MICHELLE L. MILLER
*Director*

May 13, 2022

**<u>Via CM/ECF</u>**
Hon. Freda L. Wolfson, U.S.D.J.
United States District Court, District of New Jersey
Clarkson S. Fisher Building & U.S. Courthouse
402 East State St.
Trenton, NJ 08608

> **Re:**   ***Defense Distributed, et al. v. Gurbir Grewal*,**
> **<u>Civil Action Nos. 19-cv-4753 & 21-cv-9867 (Consolidated)</u>**

Dear Chief Judge Wolfson:

Pursuant to this Court's April 25, 2022 order (Dkt. 53), the State submits this letter explaining why this Court should not transfer Case No. 21-cv-9867 (D.N.J.) to the Western District of Texas. The State respectfully requests oral argument.

The State's position is simple: Case No. 21-cv-9867 belongs in this Court, where it has already been consolidated with a near-identical case. Keeping this case in the District of New Jersey avoids wasting judicial resources on two overlapping cases and avoids the risk of conflicting decisions over the meaning and validity of a New Jersey criminal law. Keeping this case in the District of New Jersey also ensures



124 Halsey Street • TELEPHONE: (973) 877-1280 • FAX: (973) 648-4887
*New Jersey Is An Equal Opportunity Employer • Printed on Recycled Paper and Recyclable*

that local courts interpret and adjudicate a New Jersey criminal law that has never before been construed or challenged in any forum. And keeping this case in the District of New Jersey avoids any need for the parties and the court to wade through the preliminary jurisdictional questions that exist in Texas. Nothing in the Western District of Texas's nonbinding request is to the contrary.

## **Factual And Procedural Background**

In 2018, Plaintiff Defense Distributed, a Texas-based company that operates a website available in all 50 states, announced plans to disseminate computer files online that allow any individual with access to a 3D printer to produce their own firearms. *See Defense Distributed v. Grewal, et al.*, No. 1:18-cv-637, Dkt. 23 at 7-8 (W.D. Tex.). Those plans would enable individuals—including felons, terrorists, and domestic abusers—to directly print weapons, even if those persons could not pass a background check. *See id.* And they would allow individuals to produce unserialized firearms that cannot be traced by law enforcement if later used in a crime. *Id.*

In response, on July 26, 2018, the New Jersey Attorney General ("NJAG") sent Defense Distributed a cease-and-desist letter, warning that the dissemination of these files for use by New Jersey residents would violate the State's "public nuisance and negligence law." *Id.*, Dkt. 23-5 (W.D. Tex.). Before the NJAG could file in New Jersey state court, Defense Distributed rushed to court on July 29, 2018, suing the NJAG in the Western District of Texas instead. *Id.*, Dkt. 1 & 23. Defense Distributed

sought declaratory and injunctive relief, alleging that the New Jersey public nuisance law cited in the NJAG's cease-and-desist violates the First and Second Amendments, the Dormant Commerce Clause, and the Supremacy Clause, and constitutes tortious interference with Defense Distributed's contracts. *Id.*, Dkt. 23 at 23-32. On January 30, 2019, the Western District of Texas dismissed that complaint for lack of personal jurisdiction and dismissed a pending preliminary injunction motion as moot. *Defense Distributed v. Grewal*, 364 F. Supp. 3d 681 (W.D. Tex. 2019).

On February 5, 2019, Defense Distributed—along with other plaintiffs—filed a new complaint against the NJAG in this Court. *See* No. 3:19-cv-4753 (D.N.J.) ("2019 Action"). Plaintiffs' operative Complaint challenges both the July 26 cease-and-desist and a subsequent criminal statute enacted by the New Jersey Legislature in November 2018, N.J. Stat. Ann. § 2C:39-9(*l*)(2), which prohibits the distribution of certain code capable of producing firearms using a 3D printer "to a person in New Jersey" who is not a licensed firearms manufacturer. *Id.*, Dkt. 17 (D.N.J. Feb. 20, 2019). Because Plaintiffs first filed their claims in Texas and were in the process of appealing the Texas court's January 30, 2019 personal jurisdiction dismissal to the Fifth Circuit, this Court (over Plaintiffs' strong objection) stayed the second-filed 2019 Action. *See id.*, Dkt. 26 (D.N.J. Mar. 7, 2019), *appeal dismissed*, *Defense Distributed v. Att'y Gen. of N.J.*, 972 F.3d 193 (3d Cir. 2020).

Meanwhile, the Fifth Circuit reviewed the dismissal of the Texas complaint and found Plaintiffs had sufficiently alleged personal jurisdiction as to their claims related to the cease-and-desist letter. *Defense Distributed v. Grewal*, 971 F.3d 485 (5th Cir. 2020). In November 2020, Plaintiffs filed a Second Amended Complaint. No. 18-cv-637, Dkt. 117 (W.D. Tex. Nov. 10, 2020) ("Texas SAC"). The claims the Texas SAC asserted against the NJAG were largely identical to those alleged in the 2019 Action in this Court, and both sought declaratory and injunctive relief against the same cease-and-desist letter and Section 2C:39-9(*l*)(2). Indeed, the Texas SAC pled claims against N.J. Stat. Ann. § 2C:39-9(*l*)(2) for the first time in Texas; it was not mentioned in the previous version of the Texas complaint or in the Fifth Circuit's personal jurisdiction opinion. *Id.* ¶¶ 141-61. The Texas SAC added claims against U.S. State Department ("USDOS") officials for the first time, alleging that USDOS breached a 2018 Settlement Agreement between USDOS and Defense Distributed, *see id.* ¶¶ 95-126, and asserting constitutional claims and APA violations involving then-existing federal regulations, *see id.* ¶¶ 184-254.

The NJAG moved to sever and transfer the claims against him to this district, where Plaintiffs' almost-identical 2019 Action was pending. On April 19, 2021, the Western District of Texas granted that motion, reasoning that a transfer would both eliminate potential jurisdictional problems in the Texas forum and avoid the risk of conflicts over both the meaning and validity of the New Jersey law across circuits.

*Defense Distributed v. Grewal*, 2021 WL 1614328 (W.D. Tex. Apr. 19, 2021). The next day, the transferred case was docketed in this district as Case No. 3:21-cv-9867. Defense Distributed filed a notice of appeal in the Fifth Circuit, but did not move for a stay of the transfer. On June 11, 2021, this Court granted the NJAG's unopposed motion to consolidate the transferred case with Plaintiffs' already-pending 2019 Action. *See* Dkt. 159, No. 21-cv-9867; Dkt. 43, No. 19-cv-4753.

Nearly a year later, on April 1, 2022, a split panel of the Fifth Circuit vacated the Texas district court's 2021 transfer order. *See Defense Distributed v. Bruck*, 30 F.4th 414 (5th Cir. 2022). The majority acknowledged that because the transfer was made "to a district court outside the Fifth Circuit, a court over which [it] exercises no control," it "lack[ed] power to order a return of the case to our circuit." *Id.* at 423; *see also id.* at 438 (Higginson, J., dissenting) (agreeing Fifth Circuit panel has "no authority to compel a federal district court in New Jersey to return a case it received and docketed on April 20, 2021," especially after the New Jersey district court "took the additional step of consolidating the case it received with its pre-existing, parallel litigation"). Despite the effectuated transfer, however, the majority held that it could exercise jurisdiction to "direct[] the transferor district court" in Texas "to *request* that the transferee district court return the case," although it confirmed that this Court would retain discretion on whether to do so. *Id.* at 424 (emphasis added); *see also id.* at 440 (Higginson, J., dissenting) (agreeing the District of New Jersey would then

have to conduct "its own assessment of whether litigation resolving New Jersey law should be decided in Texas" in response to the "request"). Given the panel majority's disagreement with the transfer, the majority decided to order the Texas district court to make such a request in this case. *Id.* at 437.

The Texas district court transmitted that request on April 13, 2022, in the form of an order stating that it "requests" this Court transfer Case No. 21-cv-9867 to the Western District of Texas. Dkt. 167, No. 21-cv-9867. (Because No. 19-cv-4753, the 2019 Action, was never filed in Texas, the Texas court did not request its transfer.) This Court directed the parties to submit letters stating their positions regarding the transfer of Case No. 21-cv-9867 to Texas. *See* Dkt. 53, No. 19-cv-4753.

## <u>Argument</u>

### I.    Case No. 21-cv-9867 Should Be Adjudicated In New Jersey, Not Texas.

Plaintiffs' challenge to the constitutionality of this New Jersey criminal statute should remain in the District of New Jersey for two reasons. First, keeping this case in this Court permits its continued consolidation with another challenge to the same statute by many of the same parties—avoiding judicial inefficiency and the risk of conflict across courts and circuits. Second, beyond the benefits of consolidation, this *Ex Parte Young* challenge to a New Jersey law belongs in New Jersey, and keeping the case in this forum eliminates jurisdictional issues that plagued this case in Texas. The divided Fifth Circuit panel's contrary views are neither binding nor persuasive.

A.   This Challenge To New Jersey Law Should Be Heard In This Court To Allow For Continued Consolidation Of Near-Identical Challenges.

This Court's evaluation of whether to transfer Case No. 21-cv-9867 to Texas should begin with a single fact: it will have to adjudicate these same constitutional challenges to the same New Jersey law anyway. As the NJAG previously explained in his motion to consolidate these cases, Case No. 21-cv-9867 (transferred to New Jersey) and No. 19-cv-4753 (2019 Action filed in New Jersey) were brought against the same defendant by largely the same plaintiffs and counsel, assert the same causes of action, and seek to enjoin enforcement of the same actions—N.J. Stat. Ann. § 2C:39-9(*l*)(2) and the 2018 cease-and-desist. As Plaintiffs themselves argued, even if Case No. 21-cv-9867 were adjudicated in Texas, their claims in No. 19-cv-4753 would still require resolution by this Court. *See* Appellants' Supp. Br., Nos. 19-1729 & 19-3182, 2020 WL 469953, at *8-9 (3d Cir. Jan. 27, 2020) (arguing that because some of the Plaintiffs in New Jersey are not participating in No. 21-cv-9867, their claims would still require resolution in New Jersey). Accordingly, it made sense that this Court in June 2021 granted the NJAG's unopposed motion to consolidate these two cases—allowing a single judge to consider the same claims by overlapping parties in a single proceeding. *See* Dkt. 43, No. 19-cv-4753.

As a result, the Fifth Circuit's request would require not only transfer of Case No. 21-cv-9867, but its *de-consolidation* from Case No. 19-cv-4753, and would thus

undermine the benefits this Court's consolidation order achieved. Indeed, one of the fundamental questions in evaluating a transfer application is judicial efficiency; as the Supreme Court has stressed, "[t]o permit a situation in which two cases involving precisely the same issues are simultaneously pending in different District Courts leads to the wastefulness of time, energy and money that § 1404(a) was designed to prevent." *Ferens v. John Deere Co.*, 494 U.S. 516, 531 (1990); *see also CIBC World Mkts. v. Deutsche Bank Sec.*, 309 F. Supp. 2d 637, 651 (D.N.J. 2004) (same). But if "[c]onsolidation is appropriate to avoid unnecessary costs and/or delay, and to promote judicial economy," *Liberty Lincoln Mercury, Inc. v. Ford Marketing Corp.*, 149 F.R.D. 65, 80-81 (D.N.J. 1993), then an order forcing de-consolidation of two almost-identical cases in this Court by definition would produce the opposite effect. And de-consolidating two almost-identical cases specifically so that they could be adjudicated in two different circuits would be worse still: it would lead inexorably to the inefficient use of resources and unnecessary risk of conflicting judgments that Section 1404(a) exists to prevent.

The Fifth Circuit's decision to direct the Western District of Texas to request Case No. 21-cv-9867 be transferred misses a number of these key points. Although the panel mentioned the existence of the 2019 Action, it found that case irrelevant on two erroneous bases. For one, the majority concluded that there was little reason for concern about interfering with the 2019 Action where "the transferee court"—

this Court—"stayed proceedings pending our appellate panel's decision." *Bruck*, 30 F.4th at 424; *see also id.* at 436 (again emphasizing "currently stayed litigation in New Jersey"). But while this Court did stay any adjudications of these claims *on the merits* to avoid any potential duplication, this Court nevertheless acted to consolidate them specifically to capture the efficiency benefits that de-consolidation would give up. *See* Dkt. 43, No. 19-cv-4753. The panel ignored this Court's order altogether. For another, the panel treated the 2019 Action as merely a "self-protective measure" by Defense Distributed—a filing in case personal jurisdiction is ultimately lacking in Texas. *Bruck*, 30 F.4th at 432. But that view overlooks the assertion by the *other* plaintiffs to the 2019 Action that their identical claims will require resolution by this Court whatever happens in Texas. *See supra* at 7. And that error likewise meant the Fifth Circuit never grappled with the inefficiencies and serious risk of conflict resulting from de-consolidating two cases pursuing the same causes of action against the same state statute by overlapping plaintiffs.

This Court's consolidation order captured important benefits of efficiency and avoidance of potentially conflicting judgments. Allowing Plaintiffs to litigate claims against N.J. Stat. Ann. § 2C:39-9(*l*)(2) in New Jersey *and* Texas, by contrast, risks the untenable scenario of circuits conflicting over the meaning and validity of a state statute. Because the Fifth Circuit failed to appreciate the history and content of the 2019 Action in this Court, it failed to meaningfully address these concerns. But they

are paramount to the Section 1404(a) analysis and ultimately require these cases both stay in New Jersey. As a result, Case No. 21-cv-9867 should not be transferred.

> B.   This Challenge To New Jersey Law Is Best Adjudicated In This Court Under The Traditional Factors Governing Section 1404(a) Transfers.

Even if Case No. 21-cv-9867 were the only *Ex Parte Young* challenge to this New Jersey criminal statute, the relevant considerations underlying Section 1404(a) transfers would still confirm that the District of New Jersey is the appropriate forum to hear the case. As a general matter, courts evaluating Section 1404(a) transfers weigh a range of public and private interests "to determine whether on balance the litigation would more conveniently proceed and the interests of justice be better served by transfer to a different forum." *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879 (3d Cir. 1995); *Interlink Prods. Int'l v. Crowfoot*, No. 20-cv-7654, 2020 WL 6707946, at *6-7 (D.N.J. Nov. 16, 2020) (describing those considerations in an *Ex Parte Young* challenge to a California statute). The NJAG focuses on two critical points here: that New Jersey has a compelling interest in having the meaning and validity of its laws evaluated by local courts, and that jurisdictional problems would continue to plague any proceedings in the Texas district court.

*First*, even beyond the issue that transfer to Texas risks conflicting judgments on the meaning and validity of New Jersey's criminal law, New Jersey maintains a compelling interest in having its laws evaluated by local courts. *See Jumara*, 55 F.3d

at 879 (weighing "the local interest in deciding local controversies at home" as part of § 1404(a) analysis). In general, it is well-established that every state maintains an interest in having challenges to its laws "examined by local state or federal courts." *Stroman Realty v. Wercinski*, 513 F.3d 476, 487 (5th Cir. 2008). After all, these are the "courts that have special expertise interpreting its laws." *Id.*; *see also, e.g.*, *Leroy v. Great W. United Corp.*, 443 U.S. 173, 186 (1979) ("[F]ederal judges sitting in Idaho are better qualified to construe Idaho law, and to assess the character of Idaho's probable enforcement of that law, than are judges sitting elsewhere."). And they have the power to seek certification from the state court when a question is too unsettled. *See* N.J. Ct. R. 2:12A-1 (accepting certification from Third Circuit).

That is why *every* challenge of which New Jersey is aware that seeks to enjoin enforcement of a state law under *Ex Parte Young* has been reviewed in the official's state. *See, e.g.*, *Grewal*, 971 F.3d at 499 n.3 (Higginson, J., concurring) (noting that in all "cases against government officials who attempt to enforce a state law, so for no personal or commercial profit, the litigation has taken place in the governmental official's state"). This Court has thus transferred *Ex Parte Young* challenges against out-of-state officials to their home districts for the same reasons. *See Interlink*, 2020 WL 6707946, at *7-9 (Judge McNulty transferring suit against a California official to the California federal courts because "public interest factors—the local interest in

deciding local controversies at home, the public policies of the forums, and the familiarity of the trial judge with the applicable state law—all favor transfer").

This case is a particularly good example of why a lawsuit against a New Jersey official seeking to enjoin the enforcement of a New Jersey law should be heard in a New Jersey federal court. Although Plaintiffs' claims generally were pled as federal constitutional challenges, [1] vexing state statutory interpretation questions often arise in those contexts. *See, e.g.*, *Interlink*, 2020 WL 6707946, at *10 (noting plaintiff's federal "claim, although constitutional, depends on its assertion" about the scope of the challenged law, and transferring); *McKesson v. Doe*, 141 S. Ct. 48, 50-51 (2020) (same, and certifying question to state high court).

In this case, Plaintiffs assert a void-for-vagueness challenge premised on their view that the statute is ambiguous with respect to which of their printable gun files fall within its coverage, *see* Mot. for Inj. Pending Appeal at 17, No. 21-50327 (5th Cir. May 28, 2021), a state statutory interpretation question regarding the breadth of N.J. Stat. Ann. § 2C:39-9(*l*)(2). So too the Dormant Commerce Clause challenge

---

[1] The only exception is a state-law claim for tortious interference, but as this Court is aware, New Jersey maintains sovereign immunity from that claim. *See, e.g.*, *King v. Christie*, 981 F. Supp. 2d 296, 310 n.12 (D.N.J. 2013) (citing *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 99-100 (1984)) (plaintiff suing in federal court "may not bring state law claims—including state constitutional claims—against the State regardless [of] the type of relief it seeks," including claims against an official in his official capacity).

(*see* No. 18-cv-637, Dkt. 117 ¶ 294 (W.D. Tex.)) will be impacted by the reviewing court's conclusion as to the reach of the law. *See Bruck*, 30 F.4th at 440 (Higginson, J., dissenting) (noting "the parties point to no prosecution even in New Jersey using New Jersey's new law, yet the majority rules today that mandamus lies to force New Jersey to defend its new law for the first time in Texas," and stressing that this result "does injury to state sovereignty and comity"). Because the construction of this New Jersey law could eliminate or mitigate the claims, *see Interlink*, 2020 WL 6707946, at *10 (the "state-law issues … could turn out to be threshold issues by which the constitutional question is avoided entirely"), and because no court has yet interpreted Section 2C:39-9(*l*)(2), the court with the experience interpreting New Jersey statutes should be the one to handle the inquiry, and the sole circuit with the ability to certify questions to the New Jersey Supreme Court should be the one to review.

*Second*, litigating in Texas would require expending substantial resources to adjudicate certain issues related to personal jurisdiction. *See Jumara*, 55 F.3d at 879 (the transfer inquiry looks to "practical considerations that could make the trial easy, expeditious, or inexpensive"). This Court recently confronted a similar issue in what Judge McNulty termed "*International Shoe* in reverse: [an] out-of-state corporation is attempting to hale the state regulators into its preferred forum." *Interlink*, 2020 WL 6707946, at *8 n.8. In that case, this Court found that it was unclear whether the actions of the California regulators had really "create[d] the necessary contacts" with

the New Jersey forum, and held it was "a debatable question" that "might undermine any judgment this court could render" or at least "require jurisdictional discovery to develop a record." *Id.* at *8; *see also id.* (acknowledging the "persuasive articulation of federalism-based constraints on the exercise of personal jurisdiction over another state's officials"). Because "the personal jurisdiction issue may turn out to be a knotty one, requiring evidentiary hearings, factual findings, and rulings of law," *id.*, this Court found it appropriate to transfer the suit to the officials' home state, a decision that would immediately "obviate[] the need for the parties and the Court to expend limited resources on jurisdictional preliminaries," *id.* at *9.

That analysis fits this case hand-in-glove. Plaintiffs' decision to file Case No. 21-cv-9867 in the Western District of Texas introduced vexing personal jurisdiction questions that remain unresolved in that forum. Plaintiffs' theory is that the NJAG's issuance of a single cease-and-desist letter to a Texas company supports exercising jurisdiction over him in Texas to enjoin enforcement of a New Jersey law. Although the Fifth Circuit found Plaintiffs' *allegations* supported personal jurisdiction at the motion-to-dismiss stage because they plausibly asserted an effort by the NJAG to control Texas conduct that had no New Jersey connection, the panel admitted that the *facts* may later tell a different story. *See Grewal*, 971 F.3d at 492 n.6 (recognizing that although it was "required to resolve all factual disputes in favor of the plaintiff," potential narrower readings of the NJAG's goal existed); *id.* at 497 n.1 (Higginson,

J., concurring) (noting that "as the majority points out, we do not resolve the factual dispute of whether Grewal did" take actions unrelated to New Jersey, and agreeing jurisdictional discovery may later disprove jurisdiction in Texas). Because Plaintiffs bear a higher burden of establishing jurisdiction at summary judgment, *see Mullins v. TestAmerica, Inc.*, 564 F.3d 386, 399 (5th Cir. 2009), transfer would bog the case down in "knotty" jurisdictional "evidentiary hearings, factual findings, and rulings of law" that this Court has sought to avoid. *Interlink*, 2020 WL 6707946, at *9.

Not only would transfer to Texas *guarantee* jurisdictional discovery, but it is likely that the result of that discovery would be to "undermine any judgment" that a Texas "court could render." *Interlink*, 2020 WL 6707946, at *8. As noted above, the sole hook the Fifth Circuit identified for jurisdiction were allegations that a cease-and-desist letter the NJAG sent Defense Distributed in July 2018 asserted authority to regulate conduct in Texas that had no linkage to New Jersey. But because personal jurisdiction must be established on a claim-by-claim basis, *Seiferth v. Helicopteros Atuneros*, 472 F.3d 266, 275 (5th Cir. 2006), it is not clear how that would support jurisdiction over a challenge to N.J. Stat. Ann. § 2C:39-9(*l*)(2) specifically. Section 2C:39-9(*l*)(2) was never mentioned in the letter because the Legislature did not enact it until November 2018. And there is no basis to suggest that the statute regulates extraterritorial conduct; its explicit geographic scope prohibits only distribution of printable gun files "to a person in New Jersey who is not registered or licensed as a

manufacturer." Although the Fifth Circuit suggested that this might all be part of one chain of events, the panel did not refute that discovery could still be necessary in the Texas district court. *See Bruck*, 30 F.4th at 433 n.24.

In this Court, by contrast, Plaintiffs can seek to enjoin N.J. Stat. Ann. § 2C:39-9(*l*)(2) immediately. As the Third Circuit explained, if Plaintiffs "needed immediate relief, they could have withdrawn their action in Texas and pursued the New Jersey action. They did not. … Plaintiffs had a path to get the [New Jersey court] to decide the merits of their injunction request but did not take it." *Defense Distributed v. Att'y Gen.*, 972 F.3d 193, 201 (3d Cir. 2020). That admonishment against prolonging an unnecessary jurisdictional dispute underscores that keeping the matter in this Court is the more efficient result. Especially given that history, it would be strange, at best, to transfer a case to a forum in which personal jurisdiction is *harder* to establish and deciding the issue would consume significant judicial resources.

In short, it is hard to imagine a more illogical and inefficient resolution than de-consolidating two nearly-identical cases so that one can be transferred to a forum that would be less well-suited to interpret and adjudicate New Jersey law, and would re-introduce preliminary jurisdictional disputes—all while the other case still has to be resolved in this forum. The Court should instead maintain consolidation and allow Plaintiffs to proceed immediately to the merits of their claims here.

C.    <u>The Fifth Circuit's Request Has No Binding Or Persuasive Effect.</u>

Because Case No. 21-cv-9867 is most appropriately heard in this District, this Court should exercise its discretion to decline transfer. The Fifth Circuit's decision to order a Texas district court to request transfer has no binding effect, and given the issues the Fifth Circuit failed to address, it has no persuasive effect either. Moreover, declining a nonbinding request does not undermine comity; rather, comity principles confirm this Court's independent discretion to decide whether to transfer.

*First*, as the panel expressly acknowledged, the Fifth Circuit's request has no binding effect on this Court. *See Bruck*, 30 F.4th at 423 (stressing that since transfer was effectuated "to a district court outside the Fifth Circuit, a court over which [it] exercises no control," it "lack[ed] power to order a return of the case to our circuit"); *see also id.* at 438, 440 (Higginson, J., dissenting) (explaining, without disagreement from the majority, that the Fifth Circuit lacks "authority to compel a federal district court in New Jersey to return a case it received and docketed on April 20, 2021," so the District of New Jersey would have to conduct "its own assessment of whether litigation resolving New Jersey law should be decided in Texas"). For good reason: the jurisdiction of each circuit is territorially limited, so once this case left the Fifth Circuit's domain, it was also removed from its authority. *See Chrysler Credit Corp. v. Country Chrysler, Inc.*, 928 F.2d 1509, 1517 (10th Cir. 1991) (the date case files are docketed in the transferee district court "forms the effective date that appellate

jurisdiction in the transferor circuit is terminated"); *Bruck*, 30 F.4th at 423-24 (same, citing *In re Red Barn Motors, Inc.*, 794 F.3d 481 (5th Cir. 2015)).

Nor could law-of-the-case doctrine change the analysis. The Fifth Circuit held only that the Texas district court needed to request a transfer; as laid out just above, it acknowledged it was not requiring the District of New Jersey to agree. *Cf. Hayman Cash Register Co. v. Sarokin*, 669 F.2d 162, 169 (3d Cir. 1982) (noting that law of the case doctrine prevents relitigating a determination that was made "by a court of coordinate jurisdiction").[2] Any decision by this Court that treats the Fifth Circuit's nonbinding request as mandatory would therefore be *contrary* to its ruling, rather than consistent with it. That makes sense; were the rule otherwise, then the territorial limitations on circuits' jurisdiction would be meaningless. Instead, as in all contexts, when this Court exercises its "broad discretion" in conducting this transfer analysis,

---

[2] The facts of *Hayman* show how such rules would operate in a more typical context, in ways plainly distinguishable from this case. There, a D.C. district court transferred an antitrust action to the District of New Jersey, expressly finding in that order that "personal jurisdiction and proper venue existed in New Jersey at the commencement of this suit." *Id.* at 164. The New Jersey court then granted a motion to retransfer to the D.C. court based on a finding that, as to certain defendants, personal jurisdiction and venue did *not* exist in New Jersey. *Id.* The Third Circuit vacated the retransfer, holding that the transferor district court's prior "decision that personal jurisdiction existed in New Jersey over all defendants" reflected the law of the case, generally barring the transferee from deciding the issue anew. *Id.* at 165. This case bears none of the features of *Hayman*, since there the transferor's decision was made while the case was still in that court's territorial jurisdiction, and its decision was issued as a binding conclusion rather than a nonbinding request.

*Jumara*, 55 F.3d at 883, it follows the commands of the Third Circuit. It is not bound to opinions of the Fifth Circuit issued long after transfer has been effectuated.

*Second*, the Fifth Circuit's request should not have persuasive effect on this Court's analysis either. This discussion above highlights the panel majority's failure to grapple with this Court's consolidation of these near-identical cases; with the fact that the 2019 Action would still require adjudication in this district; with the benefits of having this Court interpret New Jersey statutes; and with the need for discovery and fact-finding on personal jurisdiction only in Texas. *See United Artists Theatre Circuit, Inc. v. Twp. of Warrington, Pa.*, 316 F.3d 392, 398 (3d Cir. 2003) ("Where there is substantial doubt as to whether a prior panel actually decided an issue, the later panel should not be foreclosed from considering the issue."); *Koehler v. Green*, 370 F. Supp. 2d 904, 907 (E.D. Mo. 2005) (choosing to re-evaluate venue when "the facts are so clear and convincing and obvious" as to why case belongs in that court), *aff'd*, 483 F.3d 590 (8th Cir. 2007); *see also Bruck*, 30 F.4th at 438 (Higginson, J., dissenting) (finding decision to transfer to New Jersey "so comprehensive and well-reasoned as to show that had transfer been refused, a writ for mandamus to *compel* transfer would be well supported"). When this Court independently assesses these factors, as it must, it should conclude that this case belongs in New Jersey.

The Fifth Circuit majority's view that Case No. 21-cv-9867 should be heard with Plaintiffs' suit against USDOS in Texas is no more compelling. *See Bruck*, 30

F.4th at 427-33. That positions runs into two immediate problems. For one, whatever judicial efficiencies are captured by hearing federal constitutional claims against N.J. Stat. Ann. § 2C:39-9(*l*)(2) with a smorgasbord of claims against USDOS regulations are outweighed by the efficiencies captured by hearing federal constitutional claims against Section 2C:39-9(*l*)(2) with identical claims against Section 2C:39-9(*l*)(2). *See In re Amendt*, 169 F. App'x 93, 96 (3d Cir. Feb. 16, 2006) ("Adjudicating almost identical issues in separate fora would waste judicial resources."). Further, the only overlapping allegations in the Texas SAC relate to Plaintiffs' *state-law* claim that the NJAG tortiously interfered with a 2018 settlement agreement between Defense Distributed and USDOS. No. 18-cv-637, Dkt. 117 ¶ 34 (W.D. Tex.) (in describing "common transactions and/or occurrences" between USDOS and the NJAG, only offering as examples "the execution, temporary fulfillment, temporary enjoyment, and violation of the Settlement Agreement"). But that cause of action is indisputably barred by sovereign immunity. *See supra* at 12 n.1 (citing *King*, 981 F. Supp. 2d at 310 n.12). Although the Fifth Circuit refused to consider that this state-law claim is plainly barred, *see Bruck*, 30 F.4th at 430 n.21, a claim that would so obviously be dismissed on these threshold grounds logically plays no role in evaluating whether New Jersey or Texas offers a better forum for resolving the overall case.

Finally, principles of comity are not to the contrary. As explained above, there can be no offense to comity when the Fifth Circuit itself recognized that it was only

making a request, and was not "order[ing] a return of the case to our circuit." *Id.* at 423. Any actual demand from that Court itself would have "risk[ed] 'provok[ing] a possible conflict between the Circuits.'" *Red Barn*, 794 F.3d at 484; *see also EEOC v. Univ. of Pa.*, 850 F.2d 969, 971 (3d Cir. 1988) (noting "comity requires federal district courts … to exercise care to avoid interference with each other's affairs"). Instead, comity fully supports keeping Case No. 21-cv-9867 in this Court. Retaining this case would *reduce* the risk of inter-circuit conflict over the meaning and validity of N.J. Stat. Ann. § 2C:39-9(*l*)(2). *See supra* at 9-11. And it would be consistent with traditional rules of federalism that support evaluating challenges to state officials' enforcement of their state law in their districts. *See id.*; *Interlink*, 2020 WL 6707946, at *8. Comity thus provides still further reason to adjudicate the consolidated claims against Section 2C:39-9(*l*)(2) in this district.

## II.   If This Court Intends To Transfer Case No. 21-cv-9867, It Should Await Resolution Of New Jersey's Forthcoming Petition For Certiorari.

The NJAG will be filing a petition for a writ of certiorari challenging the Fifth Circuit's assertion of mandamus jurisdiction to vacate a completed inter-circuit transfer, which conflicts with the decisions of other circuits that the circuit of the transferor court lacks jurisdiction to review a completed transfer.[3] *See, e.g.*, *Chrysler*, 928 F.2d at 1516-17; *Miller v. Toyota Motor Corp.*, 554 F.3d 653, 655

---

[3] The Fifth Circuit denied the NJAG's petition for rehearing en banc in April 2022.

(6th Cir. 2009). Ordering a transfer to Texas before the certiorari process concludes would thus create the risk that this Court relinquishes jurisdiction only for the Supreme Court to later decide the Fifth Circuit never had jurisdiction to request re-transfer of the case to Texas. It is not at all clear the NJAG could then secure return of the case to this district, since circuit precedent suggests this Court's transfer order, once effectuated, cannot be appealed to the Third Circuit. *See White v. ABCO Eng'g Corp.*, 199 F.3d 140, 143 n.4 (3d Cir. 1999). This Court should avert that untenable risk by simply awaiting resolution of New Jersey's forthcoming petition before issuing any order.

Of course, if this Court concludes the request to return the transferred case to Texas should be denied in any event, it need not await action by the Supreme Court. In that case, it can simply hold that the consolidated cases will both remain in New Jersey and—consistent with the Third Circuit's instruction in *Defense Distributed v. Attorney General*—that the parties can now proceed to the merits of their dispute.

Respectfully submitted,

MATTHEW J. PLATKIN
ACTING ATTORNEY GENERAL
OF NEW JERSEY

By:    /s/ Tim Sheehan
       Tim Sheehan
       Deputy Attorney General

cc:    All counsel of record (via CM/ECF)